931 F.2d 888
 1991 Copr.L.Dec. P 26,721, 18 U.S.P.Q.2d 2049
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
U.S. PAYPHONE, INC., Plaintiff-Appellee,
v.
EXECUTIVES UNLIMITED OF DURHAM, INC., Amerigraphix,
Incorporated, American Multimedia, Inc.,
Defendants-Appellants,
and
Bill Britt, David Riley, Defendants.
U.S. PAYPHONE, INC., Plaintiff-Appellant,
v.
EXECUTIVES UNLIMITED OF DURHAM, INC., Amerigraphix,
Incorporated, American Multimedia, Inc.,
Defendants-Appellees,
and
Bill Britt, David Riley, Defendants.
 Nos. 89-1081, 89-1085.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 29, 1990.
Decided April 29, 1991.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Durham. Richard C. Erwin, Chief District Judge. (CA-87-163-D-C)
 Wesley Thaddeus Adams, III, Charlotte, N.C., for appellants.
 Carl Donald Gunn, Gunn, Lee & Miller, Houston, Tex. (Argued), for appellee; Nick A. Nichols, Jr., Gunn, Lee & Miller, Houston, Tex., on brief.
 M.D.N.C.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, SPROUSE, Circuit Judge, and CHARLES H. HADEN, II, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal concerns copyright infringement of a reference guidebook, compiled by plaintiff, U.S. Payphone, Inc. ("Payphone"), which provided information concerning the coinoperated telephone market. The district court held that defendant, Executives Unlimited of Durham, Inc. ("Executive"), et al, had infringed Payphone's copyright and awarded Payphone in actual damages $15,000 and $20,486 of Executive's profits from the infringement. Executive appeals the judgment and damage award; Payphone cross-appeals the damage award. We affirm, except to remand for further explication of the $20,486 profit award, and reverse that part of the judgment allowing prejudgment interest.
 
 I. Factual Background
 
 2
 After Congress deregulated the business of coin-operated telephones in 1984, any private company or individual could own and operate pay telephones, subject to compliance with state tariffs. In 1986, Payphone prepared the "Payphone Magazine Reference Guide" ("Guide"), which is the subject of this litigation. The Guide, one hundred sixty pages in length, included a fifty-one page section on state tariffs. That section, which provides the basis of Payphone's infringement claim, summarized the state tariffs regulating the fees payable to telephone utilities by owners and operators of pay telephones. The President of Payphone, Mark Ostrofsky, with the assistance of three lawyers, compiled the Tariff Section. He collapsed voluminous tariff information into a format of one sheet per state. Payphone contends that the one-page format of the Tariff Section made it easy for readers to use and was the "heart" of the Guide.
 
 
 3
 Payphone first published the Guide on May 5, 1986. On November 13, 1986, it applied for and obtained a Certificate of Copyright Registration from the United States Copyright Office, and a notice of copyright was affixed to the Guide's front page.
 
 
 4
 Payphone sold 254 copies of its Guide, at a price of approximately $195 per copy.[1] Payphone's market dominance, however, was brief. In late 1986, Executive published the Executive Manual ("Manual"), a guide to Amway Corporation distributors interested in getting into the pay telephone business. During preparation of the Manual, an Executive employee telephoned an employee of National Telephone Services for information about the private payphone business. In response, the latter sent a "ten-inch high stack" of materials to Executive regarding the payphone telephone business, which included the Tariff Section from Payphone's Guide. The material, however, did not contain any notice of copyright. Executive, unaware of the source of the Tariff Section, included it in its Manual, under the heading "Tariffs and Regulations Information." When Payphone filed this action for copyright infringement on March 20, 1987, Executive immediately halted all sales of the Manual. At that time, Executive had sold approximately 6,609 copies of the Manual, at a price of $25 per copy.[2]
 
 
 5
 The district court held that, though Executive did not intentionally infringe Payphone's copyright, the Guide was copyrightable material and Executive had "failed to overcome the presumption of validity which attached to the copyrighted work." The court awarded Payphone actual damages in the amount of $15,000 and Executive's profits from the infringement in the amount of $20,486 and prejudgment interest on these sums.
 
 II. The Copyright Judgment
 
 6
 Executive admitted copying the Tariff Section of Payphone's Guide, but argues as a matter of law that the material cannot be copyrighted. Its core contention is that Payphone simply created a form and printed legislative material on it. Executive argues that Payphone's Tariff Section did not evince the requisite "subjective judgment and selectivity" necessary to constitute copyrightable material.
 
 
 7
 Payphone's registration of its copyright is, of course, prima facie evidence that the copyright is valid and that the material is original. M. Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 434 (4th Cir.1986); Blumcraft of Pittsburgh v. Newman Bros. Inc., 373 F.2d 905, 906 (6th Cir.1967). The Copyright Act of 1976 provides protection for "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. Sec. 102(a). Executive correctly notes though that legislative enactments are in the "public domain" and, therefore, normally not copyrightable. However, a "compilation"[3] of material in the public domain is copyrightable if the author exercises some "subjective judgment and selectivity in choosing items" which comprise his compilation. Dow Jones & Co. v. Board of Trade of City of Chicago, 546 F.Supp. 113, 115 (S.D.N.Y.1982). The evidence suggests that the Tariff Section could have been organized in many different ways and that Payphone expended a great deal of time creating the single-page-per-state format. The Guide, according to Payphone, is the result of hundreds of hours of reviewing, analyzing, and interpreting state tariffs and regulations of the fifty states and the District of Columbia. During discovery, Payphone produced 2700 pages of documents relating to the review, selection, coordination and arrangement of the compiled data which ultimately it organized in a "simple and readable format" of fifty-one pages.
 
 
 8
 The district court concluded that the Tariff Section clearly met the standard that we enunciated in Kramer. We agree. In Kramer, we stated:
 
 
 9
 [C]opyrightability of a compilation or derivative work does not turn on whether the component parts of the collective work are original or in the public domain. Section 103 of the Act makes this plain. It declares that the validity of a copyright of a compilation or derivative work depends on the originality of the compiler's individual contribution to the work or material regardless of whether the individual items in the material have been or ever could have been subject to copyright. It follows that the validity of the Plaintiff's copyright does not depend on the copyrightability of the components represented by the underlying work but by the originality of its own contribution to the copyrighted work.
 
 
 10
 Kramer, 783 F.2d at 440 (citing Apple Barrel Prod., Inc. v. Beard, 730 F.2d 384, 387-88 (5th Cir.1984)). Concerning the notion of "originality," the Supreme Court has recently stated:
 
 
 11
 To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious...."
 
 
 12
 * * *
 
 
 13
 A compiler may settle upon a selection or arrangement that others have used; novelty is not required. Originality requires only that the author make the selection or arrangement independently (i.e., without copying that selection or arrangement from another work), and that it display some minimal level of creativity. Presumably, the vast majority of compilations will pass this test, but not all will.
 
 
 14
 Feist Publications, Inc. v. Rural Tel. Serv. Co., 59 U.S.L.W. 4251, 4253, 4256 (1991) (citation omitted); see also Kramer, 783 F.2d at 437-38.
 
 
 15
 We are persuaded that Payphone's selection and organization of the state tariff material was sufficiently subjective and original to make the Tariff Section copyrightable material and that, therefore, Executive's inadvertent copying constituted infringement.
 
 III. The Damage Award
 
 16
 Under Sec. 504(b) of the Copyright Act, a copyright owner may recover:
 
 
 17
 the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.
 
 
 18
 17 U.S.C. Sec. 504(b). The district court awarded Payphone actual damages of $15,000, Executive's profits from the infringement in the amount of $20,486, and prejudgment interest on these sums. Both parties contest the award.
 
 A. Actual Damages
 
 19
 Payphone sold 254 copies of its Guide. The district court found that, had not Executive infringed Payphone's copyright, the latter would have sold more Guides. However, it also found that because of the constant need to update the material to keep abreast of changes in the regulatory environment, the Guide had a very short "useful life,"--estimated at three years. The court also noted the probability of only "sporadic" sales over the course of those three years.[4] As a result, it found actual damages in the amount of $15,000. Implicit in that determination, we think, is a finding that, had Executive not infringed Payphone's copyright, the latter would have sold approximately eighty more Guides. Mindful that when "establishing lost sales due to sales of an infringing product, courts must necessarily engage in some degree of speculation," we are not prepared to say that the district court erred in its computation of actual damages. Stevens Linen Assoc., Inc. v. Mastercraft Corp., 656 F.2d 11, 14 (2d Cir.1981).
 
 B. Executive's Profits
 Section 504(b) states, in pertinent part:
 
 20
 In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.
 
 
 21
 17 U.S.C. Sec. 504(b). The parties stipulated that Executive received gross revenues from sales of the Manual in the amount of $101,749. The district court found that Executive had incurred deductible expenses of $50,512, thus realizing a pretax profit of approximately $51,282.[5] Additionally, the district court found that the Tariff Section represented forty percent of the value of the Manual and, thus, concluded that Payphone was entitled to forty percent of the profits from the sale of the Manual--$20,486.
 
 
 22
 Courts are necessarily concerned with the proper application of Sec. 504(b)'s language restricting recovery of an infringer's profits to those that are not taken into account in computing actual damages. The Seventh Circuit, for example, has stated, "[i]f the profits the owner would have made but for the infringement are equal to the profits the infringer made by selling the copyrighted item, ... the 'not taken into account' clause ... bars the owner from receiving an additional award of damages based on the infringer's profits." Taylor v. Meirick, 712 F.2d 1112, 1120 (7th Cir.1983) (citations omitted); see also Robert R. Jones Assoc. Inc. v. Nino Homes, 858 F.2d 274, 281 (6th Cir.1988). However, "if the infringer makes greater profits than the copyright owner lost, because the infringer is a more efficient producer than the owner or sells in a different market, the owner is allowed to capture the additional profit even though it does not represent a loss to him." Taylor, 712 F.2d at 1120. From the record, we are unable to determine what portion, if any, of $20,496 resulted from sales by Executive that were "not taken into account" when the district court calculated Payphone's actual damages. To justify the "profits" portion of the award, all of the 6,609 Executive Manuals would necessarily have had to have been sold to persons or companies that would not have purchased Payphone's Guide, which was sold at a much higher price. Stated differently, any of Executive's sales which resulted in lost opportunities for sales by Payphone and were, therefore, calculated in the latter's actual damages, could not be considered as part of Executive's profits which Payphone could again recover. Because the district court made no finding in this respect, we remand for that determination.
 
 C. Prejudgment Interest
 
 23
 The Copyright Act of 1976 does not provide for prejudgment interest. We recognize that, even in the absence of legislative direction, a court may award it if necessary to further a statute's purposes. See Rodgers v. United States, 332 U.S. 371, 373 (1947); Robert R. Jones Assoc., 858 F.2d at 282. Generally stated, the purpose of Sec. 504(b) of the Copyright Act of 1976 is to compensate the copyright owner and to discourage the infringer by disgorging his profits. Kleier Advertising Co. v. James Miller Chevrolet, Inc., 722 F.Supp. 1544 (N.D.Ill.1989); see also Taylor, 712 F.2d at 1120. Although we do not intend to state a universal rule, we are persuaded that the award to Payphone of its actual damages plus Executive's profits, if any, will sufficiently compensate Payphone for its loss, and, since the infringement was not intentional, any additional sanction would serve no purpose.[6] Finally, we find no merit to the several remaining issues concerning proof of expenses, apportionment of the Tariff Section, deduction of income taxes, and the denial of sanctions. In view of the above, the judgment of the district court is affirmed in part, reversed in part, and remanded for action consistent with the views we have expressed.
 
 
 24
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 The "average selling price" was $177, as many Guides were initially sold at reduced prices. For simplicity, we use the regular retail $195 selling price
 
 
 [2]
 The "average selling price" was $15.40, as many of the Manuals were sold at reduced or wholesale prices. For simplicity, we use the regular retail $25 selling price
 
 
 [3]
 The Act defines "compilation" as a "work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. Sec. 101
 
 
 [4]
 Each year Payphone publishes an update of the Guide's tariff information in supplement form as part of Payphone Magazine. Executive contended that subscribers to Payphone Magazine could obtain the information for free and that is why its sales dropped. Ostrofsky, however, testified that the reason the tariff information was supplemented in Payphone Magazine was because he could no longer sell the Guide because of Executive's intrusion in the market
 Contendig that the district court should have awarded much larger damages, Payphone assumes, rather naively, that all buyers who purchased Executive's Manual would have purchased Payphone's Guide had the former not been published. The facts stronglysuggest otherwise. In two years, Payphone sold 254 copies of its Guide. In less than one year, Executive sold 6,609 copies of its Manual. It does not appear to be inconsequential that the great discrepancy in sales parallels the equally great discrepancy in price.
 
 
 [5]
 There is a $45 discrepancy between the figures, not material to the involved issues
 
 
 [6]
 Several courts have refused to grant prejudgment interest in cases arising under the Copyright Act of 1976. See Robert R. Jones Assoc., 858 F.2d at 282; Broadcast Music, Inc. v. Golden Horse Inn Corp., 709 F.Supp. 580, 581 (E.D.Pa.1989); Blackman v. Hustler Magazine, Inc., 620 F.Supp. 792, 802 (D.D.C.1985); Aitken, Hazen, Hoffman, Miller v. Empire Constr. Co., 542 F.Supp. 252, 264 (D.Neb.1982); Baldwin Cooke Co. v. Keith Clark, Inc., 420 F.Supp. 404, 409 (N.D.Ill.1976). But see Kleier Advertising, Inc. v. Premier Pontiac, Inc., 921 F.2d 1036, 1040-41 (10th Cir.1990)