**RONALD MAYOTTE & ASSOCIATES and Superb Homes, Inc., a Michigan Corporation, Plaintiffs,**

v.

**MGC BUILDING CO., Gino Cervi, and Robert Kopf, Defendants.**

No. 94–72157.

United States District Court, E.D. Michigan, Southern Division.

Dec. 21, 1994.

Julie A. Greenburg, Birmingham, MI, for plaintiffs.

David A. Perry and Charles Chandler, Livonia, MI, for defendants.

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

EDMUNDS, District Judge.

This matter has come before the Court upon Plaintiffs' Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 and 17 U.S.C. § 502(a).

### I.  Background

Plaintiff Mayotte & Associates ("Mayotte") is an architectural firm hired by Plaintiff building company Superb Homes, Inc. ("Superb").  Superb hired Mayotte to prepare original architectural plans for a residential

house named Franklin I. The plans were completed in 1991 and a Certificate of Copyright Registration subsequently issued to Mayotte. Superb completed construction of the model Franklin I in Novi, Michigan that August. A Certificate Copyright Registration subsequently issued to Mayotte for the architectural structure.

Superb then commissioned Mayotte to develop plans for a Franklin II model. Upon completion of the Franklin II plans, a Certificate of Copyright Registration issued to Mayotte. Superb is the exclusive licensee under the registrations for both sets of plans, and for the architectural structure. Superb has used the Novi model as a sales office since its construction, and has sold numerous Franklin-style homes since.

A former employee of Superb testified that sometime in May, 1993 an adult couple identifying themselves as relatives of a Mrs. Giadino visited the Superb sales office. They indicated that they had been instructed to view the Novi Franklin I model in order to see the home the Giadinos were building in Northville, Michigan. Further, the President of Superb, Albert Kligman, testified that later on that same day an adult couple visited the Superb sales office stating that their sister, Mrs. Giadino, was purchasing a "Franklin" home and that he had been instructed to view the Novi Franklin home in order to see how Mrs. Giadino's house would look.

Mr. Kligman further testified that Superb never sold a house to a customer named Giadino nor authorized construction of a Franklin-style house in Northville. Upon investigation, Superb determined that Defendants MGC Building Co., Gino Cervi, and Robert Kopf built Mr. and Mrs. Giadino's house, and that it is an infringing copy of Plaintiffs' copyrighted Franklin-style house, built with architectural plans which are infringing copies of Plaintiff's copyrighted plans, including only minor variations. Mr. Kligman further testified that he believes Defendants may be planning to build or are building further infringing copies, because he received a letter dated April 20, 1993 from a former customer stating that he had visited a model home which had "supplied him with a brochure that contained a floor plan virtually identical to the Franklin II ... and [was] told that if [he] wanted to view a model—to visit the Franklin" in Novi.

Plaintiffs seek a preliminary injunction preventing Defendants from performing any construction or work on any infringing house; promoting, advertising, selling or otherwise transferring title to any infringing house; referring customers to view Plaintiffs' model, or in any other way confusing the public into believing a relationship exists between Defendants and Plaintiffs.

Defendant Gino Cervi contends that a potential customer approached him in 1988—three years before Mayotte designed the Franklin model—to build a house, and that he contacted Defendant architect Robert Kopf to sketch the exterior of a residence. Mr. Cervi testified that Mr. Kopf tendered a colored sketch to him and that Mr. Cervi paid for Mr. Kopf's services with a check dated September 7, 1988. Mr. Cervi testified that the customer did not enter into a contract for construction of the residence but that Mr. Cervi retained possession of the sketch. Mr. Cervi further testified that Mr. and Mrs. Giadino contacted him to build them a house in 1993, that he showed them the 1988 Kopf sketch, that they approved the sketch, and that he contacted Mr. Kopf to make his sketch into a plan.

## II. Standard for preliminary injunction

The availability of injunctive relief is a procedural question that is governed by federal law. *Southern Milk Sales, Inc. v. Martin,* 924 F.2d 98 (6th Cir.1991). The Sixth Circuit has held that a court must consider four factors in deciding whether to issue a preliminary injunction:

1. whether the movant has shown a strong or substantial likelihood of success on the merits;

2. whether the movant has demonstrated irreparable injury;

3. whether the issuance of a preliminary injunction would cause substantial harm to others; and

4. whether the public interest is served by the issuance of an injunction.

*Parker v. U.S. Dept. of Agric.*, 879 F.2d 1362, 1367 (6th Cir.1989). The foregoing factors should balanced. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985). Where the three factors other than the likelihood of success all strongly favor issuing the injunction, a district court is within its discretion in issuing a preliminary injunction if the merits present a sufficiently serious question to justify a further investigation *Id.* at 1230. Alternatively, the court may also issue a preliminary injunction if the movant "at least shows serious questions going to the merits *and* irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir.1985) (citations omitted).

### III. Analysis

#### A. *Likelihood of success on the merits*

■ Copyright infringement is established by showing that (a) the plaintiff owns a valid copyright, and (b) the copyrighted work has been infringed. *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274, 275 (6th Cir. 1988).

#### 1. Validity

■ Plaintiff has tendered copies of copyright registration certificates for the plans at issue. Such certificates create the presumption of copyright validity and ownership. 17 U.S.C. § 410; *Eckes v. Card Prices Update*, 736 F.2d 859, 861 (2d Cir.1984). Defendants seek to rebut these certificates' validity by arguing that Plaintiffs failed to inform the Register of Copyrights of pre-existing works upon which the plans were based by failing to advise the Office of Superb's 1990 advertising flyer containing those same designs and plans. Although the knowing failure to advise the Copyright Office of facts which might occasion a rejection of an application renders a registration invalid, *Eckes*, 736 F.2d at 861, Defendants' argument has no merit. Whether a work is "derivative" depends upon whether the work was independently created by the party seeking to copyright it. *See, e.g., Synercom Technology, Inc. v. University Computing Co.*, 462 F.Supp. 1003, 1010 (N.D.Tex.1978). Plaintiffs' copyrighted plans therefore could not impermissibly "derive" from Plaintiffs' own identical plans printed on Plaintiffs' own flyers meant to advertise those same plans.

#### 2. Infringement

■ A showing that a defendant copied the plaintiff's protected material establishes copyright infringement. *Nino Homes*, 858 F.2d at 276. Because direct evidence of copying is rarely available, a showing that a defendant had access to the protected material and that a defendant's work is substantially similar to the protected work establishes copying. *Id.* at 276–78.

■ "Access" is defined broadly and means merely the opportunity to have viewed the protected material. In *Nino Homes*, 858 F.2d at 277 n. 2, the court held that the defendant had access to protected architectural plans simply because it built houses within three miles of the plaintiff's homes. In this case, the buildings at issue, including Plaintiffs' model home, which is open to the public, are a little more than two miles apart.[1] Further, Plaintiffs distributed sales brochures containing their copyrighted designs and submitted those designs to the City of Novi. Plaintiffs therefore have established the likely existence of access despite the affidavit of Mr. Cervi stating that he never viewed Plaintiffs plans.

Defendants argue that they could not have had access to or copied Plaintiffs' 1990 plans because Mr. Kopf created the drawings upon which the Giadino home was based in 1988. Although the drawings submitted by Defendants as Mr. Kopf's 1988 renderings unmistakably depict the Giadino home, they lack any indications that they were created in 1988. Further, the September 7, 1988 check for $400 from Mr. Cervi to Mr. Kopf bears no indication as to what it was for, and because Defendants claim that Mr. Kopf regularly performs services for Mr. Cervi, it

---

**1.** Plaintiffs' model is located at Eight Mile and Novi in the City of Novi. The Giadino home is at Six Mile and Haggerty in Northville.

could have been for anything. Finally, Defendants submitted no 1988 floor plan or affidavit by Mr. Kopf. Plaintiffs' claim is based on the infringement of the entire house, not merely the exterior elevations. Although Defendants did submit Mr. Cervi's affidavit asserting that Mr. Kopf created the drawings in 1988, the drawings depict the exterior only, and the affidavit does not defeat Plaintiffs' showing of likely access when considered in light of the objective evidence.

Whether a defendant's work is "substantially similar" to a protected work depends upon whether an ordinary observer would conclude that the defendant's work was taken from the copyrighted source. *Robert R. Jones Assoc., Inc. v. Nino Homes,* 686 F.Supp. 160 (E.D.Mich.1987), *aff'd,* 858 F.2d 274 (6th Cir.1988). This test focuses on the overall similarities, rather than the minute differences, between two works. *Atari, Inc. v. North American Philips Consumer Electronics,* 672 F.2d 607, 618 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). In the particular context of country-style log houses, only modest dissimilarities can be significant, as "similarity in the general layout of rooms can occur quite innocently." *Howard v. Sterchi,* 974 F.2d 1272, 1276 (11th Cir.1992).

Examination of Plaintiffs' and Defendants' plans reveals substantial similarities. The placement of every room, fireplace, bathroom, the garage, the angled main entrance, and the circular stairwell is identical. The placement of windows, including that of the bay window, is nearly identical, as is the placement of the closets. The arrangement of the kitchen counters is identical, and the arrangement of sinks, tubs, and toilets in the bathroom is substantially similar. The precise dimensions of each particular room are also quite similar. Unlike the log-cabin houses in *Howard, supra,* whose unavoidable 90–degree angles severely limited how they could be designed, the large suburban houses at issue here share striking but avoidable resemblances. Plaintiffs therefore have

shown the likely existence of similarity, especially given the evidence that certain members of the public thought that Superb's model home was the model for the Giadino home.

Defendants argue that the similarity between Design Basic's 2074 Wentworth floor plan and Plaintiff's floor plan demonstrates that Plaintiffs' plans are ordinary and routine. The Wentworth plan, however, is significantly unlike Plaintiffs' plans, featuring a different room, stairwell, and hallway placement, as well as a different kitchen design.[2]

## B. *Irreparable injury*

A plaintiff in a copyright case establishes a rebuttable presumption of irreparable harm by showing that a valid copyright has been infringed. *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 267 (6th Cir.1988). Defendants have done nothing to rebut this presumption other than simply state that no such threat of irreparable harm exists. Plaintiffs therefore have shown the likely existence of irreparable injury.

## C. *Harm to others*

Harm to others depends upon the exact relief provided to Plaintiffs. If the Court were to enjoin Defendants from selling a house already built or from completing construction of a house, then an injunction would severely harm Defendants.[3] Therefore, the Court will enjoin Defendants only from performing any construction or work on any new infringing house. Plaintiffs ultimately may collect money damages for any established infringement.

## D. *Public interest*

Defendants again have failed to address whether an injunction would serve the public interest. Given that failure, the fact that Plaintiffs have demonstrated a substantial likelihood of copyright infringement, and the proposition that "[i]t is virtually axiomatic that the public interest can only be served by upholding copyright protection and, corre-

---

2. Because the Court finds that Plaintiffs have established likelihood of success on the merits, the Court does not reach Plaintiffs' Lanham Act claim.

3. The Giadinos presently occupy the allegedly infringing house.

spondingly, preventing misappropriation of the skills, creative energies and resources which are invested in the protective work," *Apple Computer Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984), an injunction would further the public interest in encouraging creativity.

## IV.  Conclusion

■   Based on the foregoing, the Court hereby GRANTS Plaintiffs' Motion for Preliminary Injunction.  Defendants are hereby enjoined from (i) beginning construction of any home based on the allegedly infringing floor plans referred to in Plaintiff's complaint, (ii) promoting, advertising, selling, or otherwise transferring title to any allegedly infringing house on which construction has not yet begun, (iii) referring customers to Plaintiff's model home, and (iv) in any other way confusing the public into believing that a relationship exists between Defendants and Plaintiffs.[4]

---

**4.**  This relief contemplates that "construction" begins on a house when physical labor is expended on the direct creation of the house's actual physical structure.  Creating plans for a house, clear- ing physical space for a house, and entering into an agreement concerning the incipient building of a house does not constitute "construction."