**J.R. LAZARO BUILDERS,
INC., Plaintiff,**

v.

**R.E. RIPBERGER BUILDERS, INC.,
and Greg Maddox, Defendants.**

**Greg MADDOX, Cross-claimant,**

v.

**R.E. RIPBERGER BUILDERS,
INC., Cross-defendant.**

**No. IP 93–1291 C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 31, 1995.

Mary J. Hoeller, Lewis & Wagner, Indianapolis, IN, for plaintiff.

Michael E. Brown, Kightlinger & Gray, Richard A. Rocap, Rocap Witchger & Threlkeld, Indianapolis, IN, for defendants.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

This matter is before the Court on the motion of Co–Defendant and Cross–Defendant R.E. Ripberger Builders, Inc. ("Ripberger"), for summary judgment on all claims of Plaintiff J.R. Lazaro Builders, Inc. ("Lazaro"), and Cross–Claimant Greg Maddox. Also before the Court is the motion of Co–Defendant and Cross–Claimant Greg Maddox ("Maddox") for leave to join in Ripberger's motion for summary judgment. Maddox's motion for leave to join Ripberger's motion is granted. For the reasons stated below, the joint motion of Ripberger and Maddox for summary judgment is denied as to Plaintiff's copyright claims. To the extent the joint motion for summary judgment addresses Plaintiff's state law conversion claim, a ruling will be made when all briefs have been filed in response to the January 19, 1995, Order to Show Cause.

## I. BACKGROUND

At issue in this case is the design of the home of Co–Defendant and Cross–Claimant Greg Maddox ("Maddox"). Plaintiff J.R. Lazaro Builders, Inc., ("Lazaro") contends that Maddox and his builder, Co–Defendant and Cross–Defendant R.E. Ripberger Builders, Inc., ("Ripberger") infringed at least one Lazaro copyright in the design of Maddox's house.

The only Lazaro copyright at issue according to the language of the Second Amended Complaint (the "Complaint") is the Woodland 101 home design ("Woodland"). Another Lazaro copyright that has been discussed throughout the summary judgment briefing is the Prestige 102 home design ("Prestige"), which is a later version of the Woodland.[1] Lazaro contends that Woodland was designed on or about August 8, 1988, and registered as a Lazaro copyright on June 12, 1990. According to Lazaro, Woodland was designed by Celia Lazaro ("Celia") and Randal Turner ("Turner"). Celia, the wife of the president of Lazaro, is secretary of Lazaro, but not a paid employee. According to Lazaro's interrogatory responses, Turner, who was not a Lazaro employee, drew the Woodland plans for Celia.

The Prestige was designed in 1991 by starting with Woodland and adding a bonus room over the garage. The Prestige copyright was registered on June 2, 1992. Ripberger concedes that the Maddox home design ("MHD") is substantially similar to the Prestige.

## II. DISCUSSION

Ripberger has moved for summary judgment on the following grounds:[2] Lazaro did not have a valid copyright in Prestige at the time Ripberger created the MHD; Lazaro does not hold a valid copyright in Woodland because it was drawn by Randal Turner, an independent contractor with no contract expressly identifying his design as a "work for hire"; Lazaro has not proven that Cooper or Ripberger copied the designs at issue; and, Ripberger has proven that the MHD was independently created.

---

1. To date, Lazaro has not sought leave to amend its Complaint to include claims based on the Prestige. However, to the extent the Defendants may be considered to be making arguments for summary judgment based upon claims involving the Prestige, the Court herein substantively addresses such arguments.

2. Although Ripberger's motion has been joined by Maddox, the motion and arguments made in the motion will be referred to throughout this Entry as simply being made by Ripberger.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable finder of fact could return a verdict in its favor. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir. 1989); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf,* 870 F.2d at 1330.

In the Seventh Circuit, in order to show copyright infringement, the plaintiff has the burden of proving that she owns a valid copyright, and that the defendant copied her work. *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 614 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982) (quoting 3 *Nimmer on Copyright* § 13.01, at 13–3 (1981)). Under the Copyright Act, if the plaintiff has registered her copyright and can produce a certificate of that registration, then she has made a prima facie case of a valid copyright. 17 U.S.C. § 410(c). The burden is then shifted to the defendant to prove that the plaintiff's copyright is in some way invalid. *Autoskill Inc. v. Nat'l Educational Support Systems, Inc.,* 994 F.2d 1476, 1487 (10th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993); *Masquerade Novelty, Inc. v. Unique Industries, Inc.,* 912 F.2d 663, 668 (3rd Cir.1990).

Home designs and structures are protectable under the Copyright Act (the "Act"):

> Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression ... from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
>
> \* \* \* \* \* \*
>
> (5) pictorial, graphic, and sculptural works; [and]
>
> \* \* \* \* \* \*
>
> (8) architectural works.

17 U.S.C. § 102(a). For the purposes of the Act, an architectural work is defined as:

> the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101. Therefore, copyright protection is extended to the plans for the design of a house as well as the house itself. *Id.*

A. Validity of the Prestige Copyright[3]

Although Lazaro has submitted registration certificates for the two home designs at issue, Ripberger has attacked the validity of those copyrights on several grounds. First, Ripberger argues that Lazaro cannot maintain the instant action as to the Prestige because Lazaro did not have a valid copy-

**3.** As noted above, the Prestige does not appear to be the subject of this case. However, to the extent that Ripberger bases its motion for sum- mary judgment on the Prestige, the Court here substantively addresses such arguments.

right in Prestige at the time Ripberger created the MHD. It is undisputed that Ripberger created the MHD on or about April 14, 1992. While Lazaro contends that it designed and published Prestige in 1991, the application for Prestige's copyright was not submitted until May, 1992, and the copyright registration did not issue until June 2, 1992.

■■■■ Registration of a copyright (or, in certain cases, attempt to register) is a prerequisite to bringing an infringement action. 17 U.S.C. § 411(a). However, once a copyright has been registered, an infringement action may be maintained for infringement which took place after the work was published but before the work's copyright was registered. *See Evans Newton Inc. v. Chicago Systems Software*, 793 F.2d 889, 897 (7th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 383 (1986).[4] Recovery in such an action is limited; statutory damages and attorney's fees shall not be awarded:

> no award of statutory damages or attorney's fees, as provided by sections 504 and 505, shall be made for … any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412(2); *Evans Newton*, 793 F.2d at 896–97. Therefore, although Lazaro's recovery is limited as to Prestige, the registration date of Prestige does not preclude an infringement action as to MHD.

**B. Validity of the Woodland Copyright**

■■■ Ripberger attacks the validity of Lazaro's Woodland copyright because it was drawn by Randal Turner, who Ripberger claims was an independent contractor (rather than a Lazaro employee) with no written contract expressly identifying his design as a

"work for hire." Generally, ownership of a copyright vests initially with the author of the work. 17 U.S.C. § 201(a).

> [T]he author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection.

*Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 737, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989) (citing 17 U.S.C. § 102). Where the creation is a "work for hire," the author (and, accordingly, the owner) of the work is considered to be the actual creator's employer:

> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U.S.C. § 201(b).

Considerable debate has ensued about the definition and scope of "work for hire."[5] *See Community for Creative Non–Violence*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811, and cases cited therein. The Act defines a "work made for hire" as:

> (1) a work prepared by an employee within the scope of his or her employment; or
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101.[6] In *Community for Creative Non–Violence ("CCNV")*, the Supreme Court clarified the manner in which courts

---

**4.** Although the Supreme Court in *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 738, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989), rejected one aspect of the reasoning in *Evans Newton*, the propositions for which *Evans Newton* is cited in this Entry remain valid.

**5.** As in *Community for Creative Non–Violence*, the term "work for hire" is here used interchange-

ably with the statutory phrase "work made for hire." 490 U.S. at 737 n. 3, 109 S.Ct. at 2171 n. 3.

**6.** Section 101 of the Act defines each of the nine listed categories of "specially ordered or commissioned works."

should decide whether a work is indeed a work for hire, such that authorship (and ownership) vests with the employer of the creator, or not a work for hire, such that authorship (and ownership) vests with the actual creator. The Supreme Court focused on the test for whether a work is "prepared by an employee within the scope of his or her employment," expressly rejecting several definitions, including one limited to "formal, salaried employees," 490 U.S. at 743 n. 8, 109 S.Ct. at 2174 n. 8, and one which included any relationship in which a "party has the right to control or supervise the artist's work." *Id.* at 748, 109 S.Ct. at 2177. The Supreme Court concluded that the proper approach is to utilize the principles of the general common law of agency. *Id.* at 751, 109 S.Ct. at 2178.

*CCNV* lists numerous factors which are relevant to making the determination of employee status for purposes of the Act:

> the hiring party's right to control the manner and means by which the product is accomplished[;] ... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 751–52, 109 S.Ct. at 2178–79 (footnotes omitted) (citations omitted). If, after a consideration of these factors, it may be concluded that a work was indeed created by an employee in the scope of his or her employment, then the first prong of the "work for hire" definition in § 101 has been satisfied and ownership vests in the employer.

If, however, the *CCNV* factors are not satisfied, the creator is termed an independent contractor and the only way that his or her work may satisfy the definition of a work for hire is to meet the requirement of the second prong of § 101. Lazaro has made no claims that the designs at issue meet the requirements of the second or "independent contractor" prong of § 101. Clearly, neither a house design nor a house itself fits into any of the nine categories of "specially ordered or commissioned" works set forth in the second prong of § 101. Therefore, for the purposes of the instant case, the only relevant prong of the definition of a work for hire is the first or "employee" prong.

Ripberger asserts that on the basis of written discovery in which Lazaro states that Turner was not a Lazaro employee, Ripberger is entitled to summary judgment as to the Woodland design. As discussed above, *CCNV* clearly rejected a "formal and salaried employee" test. Lazaro's discovery response, without more, appears to simply indicate that Turner was not a "formal and salaried employee." Before invalidating a prima facie valid copyright, this Court needs more proof that the balance of the *CCNV* employee factors have not been met. In response to Ripberger's motion for summary judgment, Lazaro filed Turner's affidavit in which he details the nature of the work he did for Lazaro. Turner states that all of the work he did on Woodland was under Celia's direction and control. While Turner's statement is less than fully descriptive (and surely less than the Court will ultimately require to analyze the *CCNV* factors), it does suffice to show that there is a genuine issue of material fact as to whether Turner's work on Woodland in some way invalidates Lazaro's claim to ownership of the Woodland copyright.[7]

Even if Turner were found to be an independent contractor, there would still be a genuine issue of material fact precluding invalidation of Lazaro's ownership in the Woodland copyright. The nature and extent of Celia's participation in the design of

---

7. Even if this Court concludes that Turner was an independent contractor at the time of Woodland's creation, there may still be an issue of fact as to whether Turner transferred or assigned his authorship rights to Lazaro. *See* 17 U.S.C. §§ 101, 201(b), 204; *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529 (11th Cir.1994); *Great Southern Homes, Inc. v. Johnson & Thompson Realtors,* 797 F.Supp. 609 (M.D.Tenn.1992).

Woodland is still unclear. If Celia were found to be a Lazaro employee, it is possible that Lazaro (through Celia's contribution) and Turner are joint owners of the Woodland copyright.[8] *See CCNV*, 490 U.S. at 753, 109 S.Ct. at 2179–80, 17 U.S.C. § 101 (defining "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole"); 17 U.S.C. § 201(a) ("authors of a joint work are coowners of copyright in the work"); *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir.1994) (applying definition of "joint work").

### C. Proof of Ripberger's Alleged Infringement

Ripberger next argues that even if Lazaro's copyrights are valid, Ripberger is still entitled to summary judgment because Lazaro has not made a requisite showing of infringement. Specifically, Ripberger contends: Lazaro has not proven that Cooper (the MHD designer) or anyone at Ripberger copied the designs at issue; and, Ripberger has proven that the MHD was independently created.

 To establish infringement, a plaintiff must show "copying" of the copyrighted work by the defendant. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). Because direct evidence of copying is most often unavailable, copying may be inferred where plaintiff shows: 1) the defendant had access to the copyrighted work, and 2) the accused work is substantially similar to the copyrighted work. *Id.* (citing *Warner Brothers, Inc. v. American*

*Broadcasting Cos., Inc.*, 654 F.2d 204, 207 (2nd Cir.1981)).[9]

### 1. Access

 Access is defined as the opportunity to copy. 3 *Nimmer on Copyright* § 13.02[A], at 13–17 (1994) (citing numerous cases). Access can also be proven by showing that a third person with creative input for Defendant has had access to the copyrighted work. *See id.*, § 13.02[C] at 13–27 (citing *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675 (1st Cir.1967)). Lazaro has submitted the affidavit of Darryl Koch, a Lazaro sales representative, who states that Maddox looked at two model homes, including the Prestige model home, on or about February 22, 1992. This means that Maddox had access to Prestige before the MHD was created. Maddox's access also establishes access on the part of Ripberger (at least sufficiently to survive summary judgment) because Maddox was the impetus behind the MHD. *Arthur Rutenberg Corp. v. Parrino*, 664 F.Supp. 479, 481 (M.D.Fla.1987). Therefore, both Defendants had access to Prestige.

Proving access to Woodland is more difficult. While Lazaro contends that Cooper had access to the copyrighted designs through the DraftTech database, Ripberger has submitted Cooper's affidavit in which she testifies that "she had no access at any time to [the Prestige or the Woodland]." In support of this conclusion, Cooper states that "she does not now and has never had in her data base [sic] [the Woodland or the Prestige] nor has she ever been inside said model." Additionally, Gene Denney, who also apparently had design input on the MHD, states in his affidavit that he "had no access at any time to [the Woodland or the Prestige]."[10]

8. Such a conclusion is not a sure thing considering discovery materials filed with the Court which indicate that Celia is neither an owner of Lazaro nor is she paid by Lazaro. Obviously, the *CCNV* factors will have to be satisfied before Celia may be found to be an employee of Lazaro such that the authorship and ownership of her creations vests with Lazaro.

9. Infringement may also be proven on a showing of "striking similarity" where there is no evidence of access (or the evidence of access is "largely ... speculation and conjecture"). *See,*

*e.g., Selle v. Gibb*, 741 F.2d 896, 903–905 (7th Cir.1984). However, as there is sufficient proof of access in the instant case to survive summary judgment, the Court will not engage in a "striking similarity" analysis.

10. However, Denney also states that he "is aware of a Lazaro model located in the Stratford of Avon subdivision, but has never been inside said model." This indicates that Denney had access to the external features of at least one Lazaro design, probably the Prestige.

The only member of the design team who has not submitted an affidavit is Maddox himself. While Ripberger concedes that Maddox approached a representative of Ripberger (Gene Denney) with an existing design from another homebuilder which Maddox wanted Ripberger to build, Ripberger insists that the existing design was one by Link Durbin Builders and not Lazaro. Ripberger does not submit any evidence of this Link Durbin design with its supporting evidence for summary judgment. Neither Maddox nor Ripberger has submitted any testimony or proof to counter Lazaro's assertion that Maddox had access to Lazaro's sales literature and designs when he visited the Lazaro models. As discussed above, Maddox's access to the home designs at issue suffices to create a genuine issue of material fact as to Ripberger's access. Therefore, neither Defendant is entitled to summary judgment as to the Woodland on the element of access.[11]

### 2. Substantial Similarity [12]

"Identical copying" need not be found in order to meet the test of substantial similarity. *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 511 (7th Cir.1994). The test for determining substantial similarity in the Seventh Circuit is the so-called "ordinary observer" test. *Id.* at 508–09. Works are substantially similar where:

> the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.

*Id.* at 509 (quoting *Atari,* 672 F.2d at 614). As Judge Learned Hand stated, there is substantial similarity when "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960), *quoted in Wildlife Express Corp.,* 18 F.3d at 509.

Underlying this "ordinary observer" test is a basic premise of copyright law—that the law protects only the expression of an idea, not the idea itself. *Atari,* 672 F.2d at 615 (quoting *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976)). Thus, in order for there to be infringement, the substantialy similarity must be of the protectable expression and not the idea itself. *Id.* The idea/expression dichotomy is very important for copyright protection of architectural works and home designs; obviously, placing a bathroom adjacent to a bedroom or a walk-in closet in a master bedroom in a house are ideas not capable of copyright protection. Substantial similarity must be evaluated, instead, "on the basis of the original design elements that are expressive of the [designer's] creativity." Raphael Winnick, Note, *Copyright Protection for Architecture After the Architectural Works Copyright Protection Act of 1990,* 41 Duke L.J. 1598, 1633 (1992).

The instant case is illustrative of the difficulty of assessing a designer's creativity in the context of a rather common house. Both Ripberger and Lazaro concede that house designers regularly look to existing home designs as departure points for expressing their creativity. Ripberger contends that the general style of house at issue has been common in the Indianapolis market

---

**11.** It is not clear from Lazaro's Answer Brief whether it was attempting to argue that proof of access to the Prestige could in some way suffice to prove the element of access for a claim of infringement as to the Woodland (presumably because the Prestige itself is a variation on the Woodland). Because of the genuine issue of material fact as to Maddox's access to the Woodland, it is not necessary to address here this complicated (and convoluted) contention on the part of Lazaro.

**12.** As noted above, for purposes of the instant motion, Defendants concede that the MHD is substantially similar to the Prestige.

for ten years. There is no question that the home designs at issue are very similar. It is not clear which aspects of the Woodland and the Prestige (other than their overall layouts) Lazaro contends are protectable expression.[13] It is also unclear whether, if Ripberger could substantiate its claims of the commonality of the designs, Ripberger could invalidate Lazaro's copyrights. Because these genuine issues remain, Defendants are not entitled to summary judgment on the issue of substantial similarity.

### 3. Independent Creation

A defendant is entitled to prevail on an infringement claim if "it is established that [the defendant's] work was arrived at independently without copying." *Wildlife Express Corp.*, 18 F.3d at 508 (citing *Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99, 103 (2d Cir.1951)). Obviously, proof of independent creation is related to proof of substantial similarity and access because if a party had access to a design and the resulting work is substantially similar, there is an issue of fact as to whether the resulting work was independently created. Ripberger contends that it is entitled to summary judgment because it has submitted the affidavits of Denney and Cooper in which they describe a creation process for the MHD independent of copying Lazaro's designs.[14] However, the proof of access and substantial similarity create a genuine issue of material fact as to Ripberger's contention of independent creation. Therefore, the Defendants are not entitled to summary judgment on the issue of independent creation.

### III. CONCLUSION

For the reasons stated above, the joint motion of Ripberger and Maddox for summary judgment on Lazaro's copyright claims is denied. To the extent the motion for summary judgment addresses the state law conversion claim, that aspect of the motion will be addressed when all briefs in response to the January 19, 1995 Order to Show Cause have been filed.

It is so ORDERED.

---

13. Obviously, before this matter may be resolved Lazaro must formally identify those aspects of the designs at issue which it contends are protectable.

14. It is worth noting, however, that Ripberger does acknowledge the use of at least one other design (not belonging to Lazaro) in fashioning the MHD.