The BALSAMO/OLSON GROUP, INC., The Stough Group, Inc., and Prairie View L.P.I., Plaintiffs,

v.

BRADLEY PLACE LIMITED PARTNERSHIP, et al., Defendants.

No. 96–2131.

United States District Court, C.D. Illinois.

June 25, 1996.

---

Daniel P. Wurl, Webber & Thies, Urbana, IL, Keith D. Parr, Michael J. Gaertner, Robert J. Pugliese, Lord Bissell & Brook, Chicago, IL, for Balsamo/Olson Group, Inc., Stough Group, Inc., Prairie View LPI.

Mark J. Liss, Mark Joy, Tamara Gleason, Leydig Voit & Mayer, Chicago, IL, for Bradley Place Limited Partnership, Community Development Partners, Inc., Donald J. Gianone, Stephen E. Barron.

James R. Vogler, Jeanne Marie Gills, Foley & Lardner, Chicago, IL, for David G. Lyon.

Katherine S. Gorman, Prusak & Winne, Peoria, IL, Robert J. Harris, Anurag Gulati, Stein Ray & Conway, Chicago, IL, for William Worn and Associates.

Keith D. Parr, Michael J. Gaertner, Lord Bissell & Brook, Chicago, IL, Robert A. Egan, Egan & Trapp, Chicago, IL, for Richard T. Gammonley Enterprises Ltd.

Gary D. Nelson, Stephen J. Thomas, Heyl Royster Voelker & Allen, Peoria, IL, for Michael Buss Architects.

## ORDER

McDADE, District Judge.

Before the Court is Plaintiffs' Motion for a Preliminary Injunction. [Doc. # 4]. After an evidentiary hearing, the Court has concluded that the preliminary injunction should be granted in part and denied in part.

## BACKGROUND

Defendants[1] are currently constructing apartments designed as single-story affordable housing for senior citizens located in Bradley, Illinois (hereinafter referred to as "Bradley Place"). Plaintiffs allege that Defendants' design of these apartments illegally infringe on Plaintiffs' copyrighted artwork, architectural work, and technical drawings in violation of the Copyright Act, 17 U.S.C. § 301 *et seq.*

Plaintiff Balsamo/Olson engages in the business of architecture and design. Plaintiff The Stough Group engages in the business of developing and managing multi-family, single-story affordable senior citizen housing,[2] both directly and through affiliates. Plaintiff Prairie View L.P. is a limited partnership formed by the Stough Group or its owner to own the Prairie View Apartments in Bellwood, Illinois. In early 1990, Plaintiffs began developing an unique design for multi-family, single-story affordable housing for senior citizens. It took Plaintiffs approximately two years to develop and produce the artwork, architectural work, and techni-

cal drawings for their first project, the Prairie View Apartments. The Prairie View Apartments were successful and have resulted in the Stough Group agreeing to build similar developments using the same design in various locations throughout the State of Illinois. Plaintiffs allege that the Stough Group and its affiliates have the exclusive license to use the works at issue in this case. On May 3, 1996, Plaintiff Balsamo/Olson received Certificates of Registration from the United States Copyright office on the artwork, architectural work, and technical drawings involved in this case.[3]

Defendant Community Development Partners, Inc. began developing plans for affordable senior housing in Bradley, Illinois during July of 1993. During April of 1994, Defendant Community Development projects contacted Michael Buss and Michael Buss Architects to design a plan for such a development. Defendant Michael Buss has admitted that he copied the works at issue in this case for the Bradley Place development. During May of 1995, Defendants broke ground for the Bradley Place Development. The entire development is scheduled to be completed on or before July 1, 1996. Fifty-four of the sixty units comprising Bradley Place have been constructed and certificates of occupancy have been obtained by Defendants. The remaining six units are 95 to 98% complete and are already leased out for occupancy within the

1. The various Defendants participated in diverse ways. The owner and developer of Bradley Place is Defendant Bradley Place Limited Partnership with the general partner being Defendant Community Development Partners, Inc. Defendants Donald J. Gianone and Stephen E. Barron are officers of Community Development Partners. Inc. Defendant David G. Lynn was an unpaid consultant to the developer. Defendants Michael Buss and Michael Buss and Associates were architects who were hired to design and provide other architectural services to the development. Defendant William Worn and Associates is another architect who was involved with the project. For purposes of this motion for a preliminary injunction, all of these Defendants are collectively referred to as "Defendants" without regard to any distinction based upon their respective involvement, if any, in the alleged infringement. The Defendants who have been found to have infringed for purposes of this preliminary injunction do not include De-

fendants David G. Lynn and William Worn and Associates.

2. A project generally qualifies as "affordable housing" if a defined percentage of the housing units is set aside for senior citizens who make less than the median level income. This type of housing is developed and constructed with the financial assistance of local, state and federal governments and agencies. To qualify for financial assistance, the housing must be constructed in compliance with extensive federal and state laws and regulations such as the Environmental Barriers Act (410 ILCS 25/1), the Illinois Accessibility Code (71 Ill. Adm.Code 400), and the Americans with Disabilities Act (42 U.S.C. § 12101).

3. Copyright registration is a pre-requisite to filing suit for copyright infringement. 17 U.S.C. § 411(a).

next week. All of the lessees are over 62 years of age and are of low or very low income.

Plaintiffs are requesting the following injunctive relief:

1. Enjoining Defendants' further development, construction, planning, promotion or funding of the Bradley Place Apartments and any other project using artwork, architectural work or technical drawings based upon, copied from or derived from Balsamo/Olson's copyrighted artwork, architectural work and technical drawings;

2. Enjoining Defendants' further use, modification or copying of Balsamo/Olson's copyrighted artwork, architectural work and technical drawings; and

3. ordering the impoundment of all copies of the artwork, architectural work and technical drawings based upon, copied from or derived from Balsamo/Olson's copyrighted artwork, architectural work and technical drawings.

Defendants [4] have agreed to the injunction as to all of Plaintiffs' requests except that Defendants challenge Plaintiffs' request to enjoin the construction of the remaining incomplete units at Bradley Place. Therefore, the only issue which must be resolved by the court is whether the construction of these units should be enjoined.

### ANALYSIS

In order to decide whether a preliminary injunction should enter, the Court must consider:

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; (3) whether the plaintiff has a reasonable likelihood of success on the merits; and (4)

whether the granting of a preliminary injunction will disserve the public interest. *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 613 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982).

■ "To establish copyright infringement a plaintiff must prove ownership of a valid copyright and 'copying' by the defendant." [5] *Id.* at 614. Copyright Registration Certificates create a *prima facie* presumption of copyright validity and ownership. 17 U.S.C. § 410(c); *Illinois Bell Tel. Co. v. Haines and Co., Inc.,* 683 F.Supp. 1204, 1207 (N.D.Ill.1988), *aff'd,* 905 F.2d 1081 (7th Cir. 1990), *vacated on other grounds,* 499 U.S. 944, 111 S.Ct. 1408, 113 L.Ed.2d 462 (1991). Once such a showing has been made, the burden shifts to the Defendant to prove that the copyright is somehow invalid. *J.R. Lazaro Builders v. R.E. Ripberger Builders, Inc.,* 883 F.Supp. 336, 339 (S.D.Ind.1995).

■ Copying can be shown either by direct evidence of copying or by "infer[ence] where defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *Atari,* 672 F.2d at 614. "Because direct evidence of copying often is unavailable, copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *Atari,* 672 F.2d at 613. Defendants do not contest that Balsamo/Olson's works were copied By Defendants Michael Buss and Michael Buss Architects. Defendants do, however, challenge whether Plaintiffs had a valid copyright.

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

#### 1. *Ownership of Valid Copyright*

Plaintiff Balsamo/Olson Group's artwork, architectural work, and technical drawings

---

4. Defendants Michael Buss and Michael Buss Architects (incorrectly sued as Michael Buss and Associates) have reached a settlement with the Plaintiffs.

5. A copyright owner has the exclusive right to the copyrighted work pursuant to 17 U.S.C. § 106. Sections "107–120 provide that the own-

er of the copyright has the exclusive right to authorize the reproduction of the copyrighted work, the preparation of derivative works based on the copyrighted work, and the displaying of the copyrighted work publicly." *The Value Group, Inc. v. Mendham Lake Estates, L.P.,* 800 F.Supp. 1228, 1231 (D.N.J.1992).

are protected by Copyright Registration Certificates.[6] Consequently, Plaintiff Balsamo/Olson Group has established a *prima facie* presumption of copyright validity and ownership as to the materials covered by the certificates. Plaintiffs further assert that these works are unique and original expressions entitled to full copyright protection. *See e.g., Arthur Rutenberg Homes, Inc. v. Maloney,* 891 F.Supp. 1560, 1566 (M.D.Fla. 1995) (designs of residential homes entitled to full copyright protection); *CSM Investors, Inc. v. Everest Dev. Ltd.,* 840 F.Supp. 1304, 1310 (D.Minn.1994) (architectural plans for office entitled to full copyright protection).

▮▮▮ Defendants attempt to rebut the validity of these registration certificates "by arguing that Plaintiff[ ] failed to inform the Register of Copyrights of pre-existing works upon which the plans were based by failing to advise the Office" that certain features in the bathroom were based on pre-existing plans created by Balsamo/Olson in connection with an earlier project. *Ronald Mayotte & Assoc. v. MGC Building Co.,* 885 F.Supp. 148, 152 (E.D.Mich.1994). Defendants contend that the registration certificates are invalid because Balsamo/Olson failed to disclose that certain details in the bathroom—such as grab-bar re-enforcement detail, wall re-enforcement locations for the toilet and tub, and outlet locations—were based on prior existing work done by Balsamo/Olson.[7] It appears to the Court that Balsamo/Olson's use of such minor pre-existing details and failure to inform the Copyright Office of such use were inadvertent and innocent. "Only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action or denying enforcement on the ground of unclean hands...." *Eckes v. Card Prices Update,* 736 F.2d 859, 861–62 (2d Cir.1984). Consequently, the Court finds that Balsamo/Olson has established the likely existence of a valid copyright despite Defendants attempt to rebut this presumption. Because the evidence as to Plaintiff Balsamo/Olson Group shows the likely existence of a valid copyright and copying by Defendants, Plaintiff Balsamo/Olson has established a substantial likelihood of success on the merits.

As to Plaintiffs Stough Group and Prairie View L.P.,[8] Defendants challenge whether these Plaintiffs have any standing in this case. Plaintiff Stough Group claims that it is the exclusive licensee of the copyrighted work due to an oral agreement which was memorialized in a letter of June 18, 1996.[9]

---

6. The Copyright Act provides:

   Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression ... from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

   \*    \*    \*    \*    \*    \*

   (5) pictorial, graphic, and sculptural works; [and]

   \*    \*    \*    \*    \*    \*

   (8) architectural works.
   17 U.S.C. § 102(a). An architectural work is defined as:

   the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.
   17 U.S.C. § 101. Pictorial, graphic, and sculptural work are defined as:

   includ[ing] two-dimensional and three-dimensional works of fine, graphic and applied art

   ... diagrams.. technical drawings, including architectural plans.
   17 U.S.C. § 101.

7. The Court notes that Defendant relies on the fact that a Mr. Buster—who was Balsamo/Olson's client on the prior pre-existing work—apparently indicated certain preferences and needs that were incorporated into these designs. However, Defendant presents no evidence suggesting that Mr. Buster is a joint owner/author of these designs.

8. The evidence indicates that the ownership of each housing project developed by Stough Group is set up as a separate affiliated entity controlled by the Stough Group and its owner, Michael Pizzuto. For purposes of this motion, the Court shall treat the Stough Group and Prairie View L.P. as one and the same entity in operation and effect.

9. The content of the letter provides:

   This will memorialize the understanding that has existed and that exists between The Balsamo/Olson Group, Inc. and The Stough Group,

Under section 204(a) of the Copyright Act, "[a] transfer of copyright ownership ... is not valid unless an instrument of conveyance, or a note or memorandum of transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). Without a written agreement granting Plaintiff Stough Group an exclusive interest in the work at issue, the Stough group would not have standing to bring a copyright infringement action. *See I.A.E., Inc. v. Shaver,* 74 F.3d 768 (7th Cir.1996). Defendants assert that because the alleged oral agreement was only recently memorialized by a writing, that Plaintiff Stough Group's interest is invalid, and that Stough Group lacks standing.

The Seventh Circuit has not addressed this specific issue but has indicated that it would follow "the rule that later execution of a writing which confirms an earlier oral agreement is enforceable under Section 204(a)." *Budget Cinema, Inc. v. Watertower Assoc.,* 81 F.3d 729, 733 (7th Cir.1996). In *Budget* the Seventh Circuit referred to *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir.1995). In *Imperial,* the Eleventh Circuit concluded that " '17 U.S.C. § 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer." *Imperial,* 70 F.3d at 99 (quoting *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532–33 (11th Cir.1994)). The basis for this decision was as follows:

> Inc. the exclusive license to use The Balsamo/Olson Group, Inc.'s copyrighted artwork, architectural work and technical drawings originally prepared for Prairie View L.P.I., in connection with other similar projects.

10. The testimony of Michael Pizzuto—who is the 100% owner of the Stough Group—provided in relevant part:

> Mr. Liss: Okay at the time the lawsuit was filed, again to the best of your knowledge, there was no writing transferring any ownership of any copyright that Balsamo/Olson may have to the plaintiff, the Stough Group, isn't that correct?
> Mr. Pizzuto: We only had our word to each other that we had exclusive use, that is correct.
> Q. It's your position that there was an oral agreement between—well, let me ask you this just to complete. Was there any document in writing transferring any ownership interest to

This court has adopted the reasoning of those courts which have held that a copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio.... In addition, the chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership. Therefore, we agree that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.... And, at least in a case such as this one—where both the original owner and the transferee have joined as plaintiffs in the same lawsuit—we will not let the alleged infringer invoke section 204(a).

*Id.* (citations omitted).

■ The reasoning of the Eleventh Circuit Court of Appeals is equally applicable to this situation. The Court finds that there is sufficient evidence in the record to suggest that an oral agreement or understanding existed between Balsamo/Olson and the Stough Group from the time the works were created that the Stough Group would have the exclusive use of these copyrighted works.[10] If such an agreement did exist, the Stough Group is the exclusive licensee of the copy-

> Prairie View L.P.I. the copyrighted plans prior to the filing of this lawsuit?
>
> *   *   *   *   *   *
>
> A. Other than our agreement that we had the exclusive rights, I don't believe there was any written documentation.
> Q. Again your agreement was an oral agreement?
> A. Yes, we worked with them a lot and had a pretty good relationship and didn't feel there was a need.
>
> *   *   *   *   *   *
>
> Q. Again that's it. Well, let me ask you this. Is it your position today that it is the Stough Group who is the exclusive licensee of the plans?
> A. I mean legally if that's what you are asking about I'd have to ask my attorney. All I know is I, Michael Pizzuto, own 100 percent of all these entities that use these plans, and that's kind of the agreement that we had with our

righted works at issue. Moreover, the Court finds that the letter of June 18, 1996, memorializing this oral agreement "cured any defects in [Stough Group's] standing to maintain this copyright infringement action." *Id.* As stated by the Court in *Drew Homes,* "where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third party infringer to invoke section 204(a) to avoid suit for copyright infringement." . *Imperial,* 70 F.3d at 99; *see also Great Southern Homes v. Johnson & Thompson,* 797 F.Supp. 609, 611 (M.D.Tenn.1992) ("it would disserve copyright law's purpose to permit [section 204(a) ] to benefit an alleged wrongdoer, particularly when both the owner and the transferee have joined as plaintiffs in the same lawsuit"). Because there is evidence that the Stough Group has standing as an exclusive licensee, and evidence of a valid copyright, and evidence of copying by Defendants, the Stough Group has demonstrated a substantial likelihood of success on the merits of the infringement claim.

## B. IRREPARABLE INJURY

■ A rebuttable presumption of irreparable harm is established by showing the in-

fringement of a valid copyright. *Atari,* 672 F.2d at 620. Irreparable injury is presumed because in a copyright infringement case the courts recognize that "the confusion in the marketplace [from copyright infringement] will damage the copyright holder in incalculable and incurable ways." *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119, 124 (2d Cir.1994). Plaintiffs have shown that infringement of the copyrighted works would likely cause a dilution of their reputation and the value of their copyrighted works as an unique product, and has the effect of weakening their competitive position in the marketplace for affordable senior housing. As noted by the *Value Group* court:

> [Plaintiffs] have spent significant time, effort, and money in developing these plans. It would be a grave injustice to permit a competitor to profit from another competitor's hard work and injure that competitor simultaneously. The jeopardy to investment and competitive position caused by the copying satisfies the requirement of irreparable harm needed to support a preliminary injunction.

*Value Group, Inc.,* 800 F.Supp. at 1234. In the words of Mr. Pizzuto, Defendants "took

architect. It's me representing all these different organizations and they don't come to say Mike which one are you using, it's Mike we've got you word, we trust in you, we know you are going to pay us.
Q. So as we sit here today this alleged exclusive license is not between Balsamo/Olson Group and the Stough Group, and it's not between Balsamo/Olson and Prairie View, but rather it's between Balsamo/Olson and Mike Pizzuto personally?

\* \* \* \* \* \*

A. Me and the companies, because I am the companies.

\* \* \* \* \* \*

Q. By the way, the terms of this oral alleged exclusive agreement, were those spelled out in—when were they reached, before Prairie View was launched?
A. When were they what?
Q. When were the terms of this alleged oral license reached? When was the agreement?
A. When we began developing Prairie View Phase I.
William Schwarz—an employee of Balsamo/Olson who is not an officer—testified as follows:

Mr. Liss: I just want to understand is—let me ask you this. Let's go forward for a second. Is your first awareness of this alleged oral license agreement or about exclusive license agreement your personal awareness on or about June 18, 1996?
Mr. Schwarz: No, it is not.
Q. Was it within the few days—was it after this answered interrogatory was answered?
A. No, it has always been my understanding that the relationship between my company Balsamo/Olson and the Stough Group has given Mike Pizzuto exclusive use of these drawings.

\* \* \* \* \* \*

THE COURT: Well, let me ask you the question that apparently is behind all this. Apparently you were saying that it's always been your understanding that the Stough Group had an exclusive license to use these plans developed by Balsamo; is that correct?
THE WITNESS: That's correct.
THE COURT: Now is that understanding based on your awareness and knowledge of any conversation between someone from your architectural firm and someone from the Stough Group?
THE WITNESS: From my boss, Mr. Salvator Balsamo, conversations with him.

his two years of effort to jump start their project."

■ Defendants, however, contend that Plaintiffs delay in filing suit rebuts this presumption. The Court finds that this contention is without merit. The evidence shows that Plaintiffs moved promptly to protect their interests by investigating the possibility of infringement beginning in March of 1996.[11] A delay caused by a plaintiff's good faith efforts to investigate Defendants' infringement does not rebut the presumption of irreparable injury. *Fisher–Price, Inc.*, 25 F.3d at 124–25(six month delay to investigate not unreasonable).

"Given the presumption of irreparable harm, the possibility of actual injury, and the substantial investment expended [in time and money], [Plaintiffs] have satisfied the requirement of irreparable injury." *The Value Group, Inc.*, 800 F.Supp. at 1234. Moreover, Plaintiffs delay in filing suit due to their investigation does not alter this conclusion.

## C.   PUBLIC INTEREST

The public has a strong interest in "preserv[ing] the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights." *Atari*, 672 F.2d at 620. Indeed, "[i]t is virtually axiomatic that the public interest can only be served by upholding copyright protection and, correspondingly, preventing misappropriation of the skills, creative energies and resources which are invested in the protective work." *Apple Computer Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). An injunction would serve the public interest by encouraging such creativity.

## D.   BALANCING OF HARDSHIPS

■ If the Court enjoined Defendants from completing construction on the buildings at issue, the injunction would severely harm Defendants. *Mayotte*, 885 F.Supp. at 153. In terms of the hardships an injunction will cause, Defendants' evidence relates solely to the loss of profits, possible default on the mortgages and project financing and related financial problems including lawsuits against them by contractors, lenders, investors, and lessees of their apartments. These hardships, however real, "merit little equitable consideration." *Atari*, 672 F.2d at 620. On the other hand, Plaintiffs are not as severely harmed by allowing completion of the construction because "Plaintiffs ultimately may collect any money damages for any established infringement." *Mayotte*, 885 F.Supp. at 153. Furthermore, the Court must consider the effects of enjoining the construction[12] on nonparties who have a significant interest in the completion of the low income senior housing. *Hughes Network Systems, Inc. v. InterDigital Communications Corp.*, 17 F.3d 691, 696 (4th Cir.1994). This would include the senior citizens who have signed leases and who expect to occupy the units within a few days and institutional investors upon whose financial backs this housing program for needy senior citizens depends. Imposing such hardship upon these investors would be against the public interest because such an injunction might discourage these institutional investors from participation in similar future projects. Therefore, an injunction will have a considerable adverse effect on these nonparties who have a significant interest in the Court's decision.

Because of the significant interest of these nonparties and because Plaintiffs ultimately may collect money damages, the Court will not enjoin the construction of the last six

11.   The Court notes that there is evidence showing that as early as late December of 1995, an employee of Balsamo/Olson—driving by on Interstate 57 on a trip to visit relatives—thought that the incomplete construction at Bradley place looked familiar but did not stop to investigate. The Court does not find that this "prior knowledge" of an incomplete construction from which it is difficult to ascertain infringement rebuts the presumption of irreparable harm as to Plaintiffs.

12.   The court noted that " 'construction' begins on a house when physical labor is expended on the direct creation of the house's actual physical structure. Creating plans for a house, clearing physical space for a house, and entering into an agreement concerning the incipient building of a house does not constitute 'construction.' " *Mayotte*, 885 F.Supp. at 153.

units which are almost completed. However, because the other factors tip decidedly in favor of Plaintiffs Balsamo/Olson and the Stough Group, the Court is imposing a preliminary injunction which requires Defendants to obtain court review and approval of non-ordinary course of business transactions. Furthermore, the Court is enjoining the distribution of any profits to the Defendants and directs that any such profits will be held in escrow pending a decision on the merits. In addition, Plaintiffs are required to post a bond as required by Rule 65(c).

IT IS THEREFORE ORDERED that Plaintiff's Motion for a Preliminary injunction [Doc. # 4] is **GRANTED IN PART** and **DENIED IN PART.**

IT IS THEREFORE ORDERED as follows:

1. Plaintiffs' motion to enjoin the construction of the last six units which are almost completed is **DENIED.**

2. Plaintiffs' Motion to enjoin further development, planning, promotion or funding of the Bradley Place Apartments and any other project using artwork, architectural work or technical drawings based upon, copied from, or derived from Balsamo/Olson's copyrighted artwork, architectural work and technical drawings is **GRANTED.**

3. Plaintiffs' motion to enjoin Defendant's further use, modification or copying of Balsamo/Olson's copyrighted artwork, architectural work and technical drawings except in connection with the completion of the remaining units of Bradley Place is **GRANTED.**

4. Plaintiffs' motion for impoundment of all copies of the artwork, architectural work and technical drawings based upon, copied from or derived from Balsamo/Olson's copyrighted artwork, architectural work and technical drawings is **GRANTED.**

IT IS FURTHER ORDERED that Defendants **SHALL** obtain court review and approval of non-ordinary course of business transactions.

IT IS FURTHER ORDERED that Defendants are to be **ENJOINED** from distributing any profits inuring to Defendants[13] and directs that any such profits will be deposited with the Clerk of the Court to be deposited in an interest bearing account pending a decision on the merits. This provision shall become effective upon posting of an adequate security as required by 65(c) of the Federal Rules of Civil Procedure. In that connection, the parties are to submit to the Court on or before July 5, 1996, their recommendation of bond amount and supporting memorandum of law.

IT IS FURTHER ORDERED that Plaintiffs are required to post a bond as required by Rule 65(c) as will be determined by the Court after receipt of the parties' pleadings as to this issue.

The foregoing constitutes the Court's findings of fact and conclusions of law. So ordered.

---

**13.** As previously noted, Defendants David G. Lynn and William Worn and Associates are excluded from this preliminary injunction finding of infringement.