ROBERT R. JONES ASSOCIATES,
INC., Plaintiff–Appellee,

v.

NINO HOMES, Michele Lochirco,
Defendants–Appellants,

Diebele–Ginter, Defendant.

No. 87–1494.

United States Court of Appeals,
Sixth Circuit.

Argued June 10, 1988.

Decided Sept. 20, 1988.
Rehearing Denied Nov. 7, 1988.

Arnold Weintraub, Troy, Mich., Lisa M. DuRoss (argued), Birmingham, Mich., for defendants-appellants.

Jerold I. Schneider (argued), Spencer & Frank, Washington, D.C., for plaintiff-appellee.

Before MARTIN, JONES and MILBURN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Nino Homes and Michele Lochirco appeal the judgment entered by the district court in favor of Robert R. Jones Associates, Inc. The district court held that Nino Homes and Lochirco had violated the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, by copying Jones Associates' registered architectural drawings and by using those unauthorized copies to construct several houses, and the district court awarded Jones Associates actual damages, attorneys' fees, and prejudgment interest, 686 F.Supp. 160. This appeal presents a rather unusual question: whether the damages recoverable because of the infringement of copyrighted architectural drawings include, not only the losses attributable to the infringer's unauthorized reproduction of the copyrighted article, but also the losses suffered as a result of the infringer's subsequent use of the infringing copies. We affirm the finding of unlawful copying and subsequent use, but we reverse as to attorneys' fees and prejudgment interest.

Robert R. Jones Associates, Inc. designs, builds, and sells custom-made houses. Nino Homes also constructs and sells new houses. Michele Lochirco is the principal shareholder and president of Nino Homes, and he is also the company's chief executive and operating officer.

In 1980, Jones Associates hired an architect to prepare a complete set of architectural drawings, including floor plans and elevations, for a house which was eventually called the "Aspen". These plans were based on design concepts generated by Robert R. Jones, the sole shareholder of Jones Associates. After receiving the completed plans from the architect, Jones Associates constructed two model houses in accordance with the Aspen plans, one in the Grosse Pines subdivision in Rochester, Michigan, the other in the Maplewood North subdivision in West Bloomfield, Michigan. In order to promote sales of its houses in those two subdivisions, Jones Associates distributed to potential buyers brochures which contained abridged floor plans of the Aspen.

In June 1983, one of those potential customers informed Robert Jones that a competing developer was constructing houses that were very similar to the Aspen. Jones subsequently investigated this tip, and, while driving through Nino Homes' Clinton River Valley subdivision, a development less than three miles from Jones Associates' Grosse Pines subdivision, he recognized one of the houses as being nearly identical to his design. Jones then checked the building permit at the construction site, and from the information contained on the permit, Jones was able to locate the building plans filed by Nino Homes with the Rochester Hills Township. After examining these plans, Jones concluded that his Aspen plans had been copied, so he promptly registered the complete architectural drawings and the abridged floor plans. Immediately thereafter, Jones sent a letter to Nino Homes demanding that construction of the allegedly identical house cease. When Nino Homes denied that its house, which it called the "Riverside", was a copy of the Aspen, Jones Associates commenced this action.

During the trial which followed, Jones Associates offered evidence that Nino Homes had unlawfully copied its Aspen plans. The record shows that Nino Homes had hired an architectural firm called Diebele–Ginter to design a house. Before construction of the house initially designed by Diebele–Ginter had begun, however, Lochirco apparently gave Clifford Ginter, one

of the two partners in the architectural firm, a photocopy of the Aspen abridged floor plans contained in the promotional brochure. According to the testimony of Richard J. Deibele, Ginter's partner, Lochirco instructed Ginter to copy these plans for use by Nino Homes. The photocopy allegedly given by Lochirco to Ginter, who died before the case went to trial, was subsequently discovered in Diebele–Ginter's files and introduced into evidence by Jones Associates.

On the basis of this evidence, and other documents which showed that the Riverside design was virtually identical to the Aspen design, the district court concluded that Nino Homes and Diebele–Ginter had infringed upon Jones Associates' copyright. The court then found that, had Nino Homes not sold seven houses which were built according to the infringing copies, Jones Associates would have sold seven additional houses. Therefore, the court awarded actual damages in the amount of $298,870: $212,550 for presumed profits not earned by Jones Associates because of Nino Homes' infringement, and $86,320 for the profits earned by Nino Homes from the sale of the houses built pursuant to the infringing plans. The district court also awarded attorneys' fees to Jones Associates, but the court limited this award to ⅝ths of the fees incurred because two of the seven houses were completed before Jones Associates' copyrights were registered. The district court subsequently amended its judgment to include prejudgment interest. Lochirco and Nino Homes now appeal, challenging the district court's decision in several respects.[1]

■ At the outset, Lochirco and Nino Homes contest the court's liability finding. They contend that the district court erred in admitting Diebele's testimony concerning what he was told by his partner about the photocopy which was found in Diebele–Ginter's files. Lochirco and Nino Homes argue that this inadmissible hearsay testimony is the only evidence of their access to the copyrighted work. Therefore, they maintain, they cannot be held liable for copyright infringement. This argument is unavailing for two reasons.

First, we believe Diebele's testimony was properly admitted. The district court held that the challenged testimony, that Ginter told Diebele that Lochirco had given him the photocopy of the Aspen floor plans and had instructed him to duplicate them, was admissible under Fed.R.Evid. 801(d)(2)(D). This subsection provides that a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Without question, the statement is being offered against a party; both Lochirco and Nino Homes were named as defendants. And it was made by their "agent"; Ginter was hired by Lochirco to design a house for his company, Nino Homes. Finally, Ginter's statement to Diebele about the origin of the photocopy concerns the very essence of his employment relationship with Lochirco and Nino Homes, and the statement was made during the existence of that relationship. Therefore, the court properly admitted the testimony.

Lochirco and Nino Homes' liability argument also fails for a second reason. They maintain that proof of their access to the copyrighted material is a prerequisite to finding them liable for copyright infringement, and they claim that the arguably inadmissible testimony is the only evidence of such access. Therefore, they continue, the court erred in finding them liable. This argument is fundamentally flawed.

■ In order to establish copyright infringement, the owner of a valid copyright must prove that the defendant or the person who composed the allegedly-infringing work copied the copyrighted material. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 113 (5th Cir.1978). Because rarely is there direct evidence of unauthorized duplication, the copyright

1. Diebele–Ginter, the other defendant found liable for copyright infringement by the district court, did not appeal that decision.

holder frequently proves copying by showing that the defendant or the person who composed the defendant's work had access to the copyrighted material and that the defendant's work is substantially similar to the protected work. *Id.* In short, in order to prove copying indirectly, the copyright holder need not necessarily prove access on the part of the alleged infringer, so long as there is proof that the person who composed the allegedly-infrining work had access to the copyrighted material.

Here, Jones Associates has clearly proven that Diebele–Ginter, the architectural firm that designed Nino Homes' allegedly infringing plans, had access to the copyrighted work. Access merely means an opportunity to view the protected material. 3 M. Nimmer on Copyright § 13.02[A] (1988). The photocopy found in the firm's files clearly shows that the architects had an opportunity to view Jones Associates' design. Diebele's challenged testimony, which shows how the architects obtained that access, was not vital to the success of Jones Associates' claim. This testimony, which we believe was properly admitted, merely helped the court to apportion relative responsibility for the unlawful conduct.[2] Because Jones Associates has proven that the drafter of the allegedly infringing plans had access to its copyrighted work, because Lochirco admitted during the trial that he made several copies of Diebele–Ginter's infringing plans, and because Lochirco and Nino Homes in this appeal have not challenged the court's finding that their Riverside plans are substantially similar to the Aspen plans, we affirm the court's conclusion that Lochirco and Nino Homes have infringed upon Jones Associates' copyright.

With respect to the amount of actual damages awarded to Jones Associates, however, we must modify the district court's decision. While we do not adopt the position advanced by Nino Homes, we believe the court's award is excessive.

Nino Homes contends that the district court used an improper standard to compute the damages it awarded to Jones Associates. The court held that Jones Associates was entitled to recover the profits it would have earned on the sale of additional houses had Nino Homes not used infringing copies of the Aspen plans to build houses which it sold. Nino Homes maintains that this "lost profits" standard is not the appropriate measure of damages in an action for copyright infringement where the protected work is architectural plans. Rather, Nino Homes argues, the proper standard is the fair market value of the architectural plans at the time of the infringement. We disagree. But to appreciate fully the legal issue posed by this seemingly straightforward argument, one must understand the fundamental differences between copyright and patent laws.

Under 17 U.S.C. § 102(a) (1982), "original works of authorship fixed in any tangible medium of expression" are eligible for copyright protection. A copyright, if awarded, gives its owner, among other things, the exclusive right "to reproduce the copyrighted work" and "to prepare derivative works based upon the copyrighted work." *Id.* at § 106. This power to prevent unauthorized reproduction, though, is inherently limited; 17 U.S.C. § 102(b) provides that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." "It is a fundamental maxim of copyright law, [therefore], that a copyright protects 'only the work's particular expression of an idea, not the idea itself.'" *Demetriades v. Kaufmann,* 680 F.Supp. 658, 662 (S.D.N.Y.1988) (*quoting Eden Toys, Inc. v. Marshall Field & Co.,* 675 F.2d 498, 500 (2d Cir.1982)).

---

**2.** Given that Lochirco was building houses within three miles of Jones Associates, he clearly had a reasonable opportunity to view the Aspen and see the abridged floor plans contained in the promotional brochure. Therefore, irrespec-

tive of the testimony linking him to the specific brochure discovered in Diebele–Ginter's files, the court's conclusion that Lochirco had access to the protected work is clearly correct.

The protection of innovative ideas, on the other hand, is the province of patent law. In order to encourage technological advancement, patent law deems "new and useful" ideas as deserving of certain, specific protections. 35 U.S.C. § 101 (1982). Generally, patents are awarded to novel inventions and unique designs. But while a copyright merely confers on its owner an exclusive right to reproduce the original work, a patent gives its owner a far broader right: "the right to exclude others from making, using, or selling the invention" for a specific period of time. *Id.* at § 154. In order to be eligible for this right to exclusive use, though, the applicant for a patent must show that the idea is novel. In contrast, the applicant for a copyright need only establish that the creative work is original. *See generally* 1 Nimmer at § 2.01[A].

Because their work can rarely, if ever, satisfy the more rigorous novelty standard applied to patent applications, architects generally look to copyright law for protection of their creative works. And, although the Copyright Act does not expressly refer to architectural plans, the statute does afford protection to "pictorial, graphic, and sculptural works," 17 U.S.C. § 102(a)(5), which are defined as including "technical drawings, diagrams, and models." *Id.* at § 101. "Consistent with explicit congressional intent, these sections have been interpreted to include architectural drawings." *Demetriades v. Kaufmann,* 680 F.Supp. at 663 n. 6.

Architectural plans, however, "are subject to certain qualifications peculiar to this form of work." 1 Nimmer § 2.08[D][2][a] at 2–105. The copyright statute "does not afford, to the owner of a copyright in a work that portrays a useful article as such, any greater or lesser rights with respect to the making, distribution, or display of the useful article so portrayed than those afforded to such works under the law ... in effect on December 31, 1977." 17 U.S.C. § 113(b). A "useful article" is one which has "an intrinsic utilitarian function." *Id.* at § 1.01. Because any building or house undoubtedly falls within this definition, architectural plans necessarily depict a useful article and are subject to this restriction. Therefore, the owner of a copyright in architectural plans has statutory copyright protection in the building depicted in those plans only to the extent that such protection was recognized by the law prior to January 1, 1978. The limitations of this protection were initially set by the Supreme Court in *Baker v. Selden,* 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879).

In *Baker,* the plaintiff sought copyright protection for a book which the author claimed explained a new bookkeeping system. In addition to material explaining the system, the book included blank forms specifically designed for use with this system. The defendant in the case subsequently published a book with similar forms. The plaintiff then brought suit claiming that, because the defendant's work embodied an accounting system similar to the system explained in the plaintiff's book, the defendant's work infringed on plaintiff's copyright.

The Supreme Court rejected the plaintiff's Claim. The Court essentially held that, "although copyright protection extends to the particular *explanation* of an art or work, it does not protect *use* of the art or work described by the copyrighted publication." *Demetriades v. Kaufmann,* 680 F.Supp. at 663 (emphasis in original). The distinction the Court drew between "explanation" and "use" stems from the fundamental differences between the kind of protection afforded by a copyright and the protection afforded by a patent. The Court reasoned that "[t]o give the author of the book an exclusive property to the art described therein, when no examination of its novelty has ever been officially made, would be a surprise and a fraud upon the public. That is the province of letters-patent, not of copyright." *Baker v. Selden,* 101 U.S. at 102. In essence, the plaintiff in *Baker* could prevent the unauthorized reproduction of the actual book, but, unless he had a patent, the plaintiff could not prevent others from using the accounting forms, the useful article embodied in the book.

The doctrine enunciated in *Baker v. Selden* is particularly problematic where architectural plans are the copyrighted items because the principal value of such creative works lies in their use in constructing a building. If *Baker* is applied strictly, and the Copyright Act is interpreted as merely prohibiting others from selling copyrighted plans and not from using the plans to construct other buildings, then the statute may not afford the kind of protection necessary to give architects adequate incentive to create new architectural designs. Conversely, giving the owner of a copyright in architectural plans the right to prevent others from constructing buildings substantially similar to the one depicted in the copyrighted plans, without requiring the architect to show that the design is novel as opposed to merely original, would give architects unwarranted monopoly powers with the result that the costs of houses and other buildings would rise unnecessarily. Other courts have also struggled to balance these competing concerns—to remain faithful to *Baker*, yet afford architects the protection Congress clearly intended to provide them.[3]

This court addressed the issue in *Scholz Homes, Inc. v. Maddox*, 379 F.2d 84 (6th Cir.1967). In that case, the plaintiff had a valid copyright in plans for a split-level house. In order to advertise the house, the developer distributed a copyrighted booklet which contained a drawing of the house. The defendant allegedly took this publicized sketch to an architect so that the architect could prepare plans essentially identical to plaintiff's design. The defendant then used the architect's plans to build his house.

The court in *Scholz Homes* recognized the dilemma caused by *Baker v. Selden* in such cases. The court stated that, if read most literally, *"Baker* would seem to permit the making of [duplicate] plans as well as the construction of [identical] buildings." *Id.* at 86. In order to give architects some protection, however, the court sug-

gested that *Baker* could be interpreted as protecting solely against the selling of infringing plans, but not against their unauthorized use. *Id.* Finally, the court stated that, to give architects even greater protection, *Baker* could be followed only to the extent of holding that the possession of the copyright in the plans gives no exclusive right to construct the depicted building; accordingly, more extensive protection would "be provided by declaring the making of unauthorized copies [and the construction of a building according to the infringing copies] of the plans to be an infringement." *Id.*

The *Scholz Homes* court, however, avoided this difficult issue. The court concluded that the brochure which contained the drawing "was copyrighted to preserve its value as an advertising medium and not to give Scholz the exclusive right to copy the plans depicted therein." *Id.* at 87. Therefore, the court reasoned, the district court had correctly concluded that there was insufficient evidence to support a claim of infringement. *Id.* Other courts, however, have tackled the fundamental issue head-on.

In *Imperial Homes Corp. v. Lamont*, 458 F.2d 895 (5th Cir.1972), a builder advertised its houses by distributing brochures which contained a copy of the floor plan from the complete set of copyrighted architectural drawings. After visiting one of the builder's houses and obtaining one of the brochures, a potential customer proceeded to develop a set of drawings for a house which was to be substantially similar to the builder's design. The builder brought an action for copyright infringement and sought to enjoin the customer from using the allegedly infringing plans.

The court in *Imperial Homes* recognized that the *Baker* decision warned against extending a copyright into a patent. The court reasoned that "no copyrighted architectural plans ... may clothe their author with the exclusive right to reproduce the

---

**3.** Professor Nimmer framed the issue succinctly: "But are there some works [i.e. architectural plans] which by their very nature may be copied only for purposes of use and not for purposes of explanation, so that to deny liability by reason of copying is in effect if not in theory to deny copyrightability?" 1 Nimmer § 2.18[C] [1] at 2–200.

dwelling pictured." *Id.* at 899. The court, though, then stated that nothing in *Baker v. Selden* "prevents such a copyright from vesting the law's grant of an exclusive right to make copies of the copyrighted plans so as to instruct a would-be builder on how to proceed to construct the dwelling pictured." *Id.* Therefore, although the court expressly did "not hold that the [defendants] were in anywise restricted by the existence of Imperial's copyright from reproducing a substantially identical residential dwelling," the court held that, "if copyrighted architectural drawings of the originator of such plans are imitated or transcribed in whole or in part, infringement occurs." *Id.*

The court in *Herman Frankel Organization v. Tegman*, 367 F.Supp. 1051 (E.D.Mich.1973), reached a similar conclusion. In *Tegman*, a residential builder brought an action for copyright infringement against a competing contractor who admitted copying copyrighted abridged floor plans. In holding the defendant liable for copyright infringement, the court interpreted *Baker v. Selden* as implicitly drawing an important distinction: "A person cannot, by copyrighting plans, prevent the building of a house similar to that taught by the copyrighted plans.... A person should, however, be able to prevent another from copying copyrighted houseplans *and using them to build the house.*" *Id.* at 1053 (emphasis added). The *Tegman* court concluded that "[t]his result protects against copying of copyrighted material, yet does not change the copyright act into a patent act and give the person holding the copyright a monopoly on the ideas there expressed." *Id.* at 1054.

Another federal district court recently addressed a similar issue. In *Demetriades v. Kaufmann, supra*, a real estate developer brought a copyright infringement action to enjoin another developer from completing construction of a house which the defendant conceded was being built pursuant to plans which were merely tracings of the plaintiff's copyrighted plans. The court recognized that, under *Baker v. Selden*, although the plaintiff may have a valid copyright in the architectural plans that served as the basis for its uniquely designed house, that copyright "protection simply does not extend to the design or the house itself absent a design patent." *Demetriades v. Kaufmann*, 680 F.Supp. at 665. The court held, however, "that the unauthorized reproduction of copyrighted architectural plans constitutes infringement." *Id.* Accordingly, although the court refused to enjoin construction of the defendant's substantially similar house, the court enjoined the defendants from further, unauthorized copying of plaintiff's architectural plans, and, of greater significance in the matter before us, the court "further enjoined [the defendants] from relying on any infringing copies of those plans." *Id.* at 666.[4]

The rule which emerges from these cases is that one may construct a house which is identical to a house depicted in copyrighted architectural plans, but one may not directly copy those plans and then use the infringing copy to construct the house. As a logical extension of this rule, we hold that, where someone makes infringing copies of another's copyrighted architectural plans, the damages recoverable by the copyright owner include the losses suffered as a result of the infringer's subsequent use of the infringing copies.[5] Ac-

---

4. In *Muller v. Triborough Bridge Authority*, 43 F.Supp. 298 (S.D.N.Y.1942), the court held that the copyright in a plan for the construction of an approach to a highway bridge did not give the copyright owner the power to prevent someone else from using the copyrighted plan to build the actual structure. The court in *Demetriades*, though, felt its decision was consistent with *Muller*, presumably because it was unclear in *Muller* whether the defendants had made infringing copies or had merely used the copyrighted original to construct the approach. *See Demetriades v. Kaufmann*, 680 F.Supp. at 664.

5. The same result would not necessarily obtain if the alleged infringer merely made houses which were substantially similar to the house depicted in the copyrighted plans. Our holding is limited to the facts before us, and our decision rests in large part on the convincing evidence that Lochirco directly copied the Aspen plans themselves and did not merely duplicate the house. *Cf.* 1 Nimmer § 2.08[D][2] at 2–106.

cordingly, the measure of damages in this case is the profits Jones Associates would have made on houses it would have sold but for Nino Homes' unauthorized duplication of the Aspen plans and Nino Homes' use of its infringing copies to build its Riverside houses. Therefore, the district court's decision to award Jones Associates $212,550 for profits it would have earned but for Nino Homes' sale of seven houses built pursuant to the infringing plans is correct.

■ In a copyright infringement action, the copyright owner is also entitled to recover "any profits of the infringer that are attributable to the infringement *and are not taken into account in computing the actual damages.*" 17 U.S.C. § 504(b) (emphasis added). Here, however, where the infringer's profit per house is less than the copyright owner's profit margin,[6] and where all of the infringer's sales were counted as sales lost by the copyright owner, all of the infringer's profits attributable to the infringement were already taken into account in the actual damages awarded to the copyright owner. Therefore, the district court's decision to add Nino Homes' profits of $86,320 to the award of Jones Associates' lost profits constitutes the kind of double recovery clearly precluded by the statute. Accordingly, that aspect of the district court's decision is reversed.

■ We also believe the district court's decision to award attorneys' fees was improper. In addition to damages, the district court "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Under section 412(2) of Title 17, however, the court may not award attorneys' fees for "[a]ny infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publica-

tion of the work." The promotional brochure was first published in July 1981, but Jones Associates did not register its copyrights in the drawings and the floor plans until June 1983. Finding that construction of two of the seven houses was completed after July 1981, yet prior to when the registrations became effective in June 1983, the district court limited the award of attorneys' fees to ⁵⁄₇ths of the fees incurred.

This proportional limitation, however, is fundamentally at odds with our analysis of *Baker v. Selden* and its progeny. Here, we have held that, although the owner of copyright in architectural plans cannot prevent the building of a duplicate structure, the copyright owner is entitled to recover lost profits if the alleged infringer uses infringing copies of the copyrighted plans to construct the substantially similar building. Critical to our conclusion that this holding is consistent with *Baker* is the fact that Nino Homes copied the Aspen plans before building its houses pursuant to the infringing copies. Conceptually, therefore using those infringing copies to build seven houses did not constitute seven discrete acts of infringement. Rather, the infringing act was the making of infringing plans, and the construction of the houses according to those infringing copies merely multiplied the damages attributable to the infringing act. Moreover, this conclusion advances the statute's goal of encouraging prompt registration, and it is consistent with the decisions of other courts that have addressed the same issue in other contexts. *See, e.g., Whelan Assoc., Inc. v. Jaslow Dental Laboratory,* 609 F.Supp. 1325 (E.D. Pa.1985), and *Johnson v. University of Virginia,* 606 F.Supp. 321 (W.D.Va.1985). Thus, because the copying of the plans, the infringing act, occurred in March 1983, after the copyrighted plans' first publication but before the registrations became effective, the court erred in awarding attorneys' fees.[7]

---

6. The district court found that Jones Associates earned, on average, $32,700 on the sale of each Aspen. Nino Homes, however, only earned an average profit of $13,280 on the sale of each Riverside according to the court's findings.

7. Jones Associates suggests that the award of attorneys' fees is a decision committed to the discretion of the district court and that we may not upset such an award unless we find that the court abused its discretion. Although section 505 provides that "the court in its discretion"

Finally, we must also vacate the district court's decision to award prejudgment interest. The Copyright Act neither expressly allows nor prohibits awarding prejudgment interest in copyright infringement cases. As we stated in *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988 (6th Cir.1982), "[i]n the absence of legislative direction, the Supreme Court, [in *Rodgers v. United States*, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947)], directed that the decision to grant or deny prejudgment interest should hinge on whether to do so would further the congressional purposes underlying the obligations imposed by the statute in question." *Id.* at 989. Here, the district court granted Jones Associates' motion for prejudgment interest in order to provide an effective sanction against copyright infringement. We believe the measure of damages applied in this case is clearly sufficient to promote innovation in architectural design and deter unauthorized exploitation of someone else's creative expressions. *Accord Baldwin Cooke Co. v. Keith Clark, Inc.*, 420 F.Supp. 404, 409 (E.D.Ill.1976) (even in case of flagrant infringement "cumulative award of defendant's profits and plaintiff's damages is sufficiently severe [so] as to deter others from like conduct without the need for an award of prejudgment interest").[8] Therefore, we reverse and vacate the award of prejudgment interest.

In sum, we affirm the district court's decision to compensate Jones Associates for the damages it suffered, both as a result of Nino Homes' unauthorized duplication of Jones Associates' copyrighted architectural plans and, more significantly, as a result of Nino Homes' subsequent use of the infringing copies. The awarding of Nino Homes' profits in addition to Jones Associates' actual damages, however, constitutes a double recovery in clear contra-

vention of the statutory language, and it is reversed. We also reverse and vacate the district court's decision to award attorneys' fees and prejudgment interest.

may award attorneys' fees, this statutory authority is made expressly subject to other provisions of "this title." Section 504 clearly qualifies section 505. Because the interpretation of these two statutes raises a legal issue, the abuse of discretion standard does not apply.

**8.** The Patent Act, unlike the Copyright Act, expressly authorizes the court to award prejudg-

ment interest. 35 U.S.C. § 284. This distinction in statutes governing similar activities suggests that Congress believed that giving the court in copyright infringement cases the discretionary authority to award costs and attorneys' fees would be sufficient to enable the court to enhance the deterrent force of the law in cases of flagrant misconduct.