NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0757n.06
Filed: August 29, 2005

Case Nos. 04-1545, 04-2106, 04-1586

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WINFIELD COLLECTION, LIMITED, | ) | |
| | ) | |
| Plaintiff-Appellant Cross-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| GEMMY INDUSTRIES, CORP., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee Cross-Appellant. | ) | |
| | ) | |

_____

BEFORE: KEITH, BATCHELDER, and COLE, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Winfield Collection Limited ("Winfield")

appeals the district court's order granting summary judgment to Gemmy Industries Corp.

("Gemmy") on Winfield's copyright infringement action against Gemmy and dismissing the action.

Winfield also appeals the district court's award of attorney fees to Gemmy. Gemmy cross appeals

a ruling by the district court refusing to strike certain evidence that Gemmy maintains was

improperly withheld by Winfield during discovery. Because Gemmy's allegedly infringing work

is not substantially similar to Winfield's work, and the district court's refusal to strike the challenged

evidence was harmless in any event, we affirm the judgments of the district court dismissing

Winfield's copyright claim and refusing to strike the disputed evidence. We conclude, however, that

the district court abused its discretion in finding that Winfield's complaint was frivolous, and we

reverse the judgment awarding attorney fees to Gemmy.

**BACKGROUND**

Winfield produces two-dimensional craft designs, which consumers purchase to produce craft projects. These designs include instructions and images that explain how to create and assemble the particular project. In 1996, Winfield produced a design that enables consumers to craft a witch-like figure that appears to have just crashed into a tree, pole, or other structure ("Winfield's witch"). The design calls for consumers to use plywood for the figure's body/clothing, hat, socks, and boots; a mop for the hair; and a black plastic trash bag for the cape. The design further suggests how consumers should paint the plywood (e.g., lime and white stripes for the socks and "fire red" for the fingernails). Winfield sells only the designs for the crafts, not the materials for use in making the crafts. On July 23, 1996, Winfield obtained Copyright Registration No. VA-781-855 for its witch design, which included a photograph of a witch assembled according to that design. Winfield's copyright application claims copyright protection for two-dimensional artwork, text, and photographs, and "[a]ll text and artwork of new patterns as listed."

Gemmy produces three-dimensional figures, not two-dimensional designs. Prior to 1996, Gemmy produced a decorative witch figure sitting on a broom, which consumers could hang in the air ("Gemmy's hanging witch"). Gemmy copyrighted this witch, No. VA1-198-449. In addition, in 1998, Gemmy began to produce two witch figures that appear to have just crashed into a tree or similar object while flying on a broom (collectively, "Gemmy's crashing witch").[1] One figure comes with a tree trunk; the other can be attached to a consumer's existing tree, pole, or similar object; and both are the subject of Copyright Registration No. VA1-003-018. Gemmy's hanging witch and crashing witch do not require consumers to craft or assemble the figures. Furthermore,

---

[1]At no point does either party advance arguments involving any difference in appearance between the two Gemmy crashing witches.

2

Gemmy's witches are not made from plywood and other household materials. The figures are finished products made from refined materials, with detailed features such as molded-plastic hands, socks, and boots; silk-like hair; molded-foam arms, legs, and body; and fabric hat, clothing, and cape.

Winfield's one-count complaint alleged that Gemmy's crashing witch infringed the copyright of Winfield's witch. Gemmy responded with a two-count counterclaim. First, Gemmy asked for a declaratory judgment of non-infringement; second, Gemmy argued that if the court were to determine that its crashing witch is substantially similar to Winfield's witch, then Winfield's witch is substantially similar to–and thus infringes–Gemmy's earlier hanging witch.

The district court granted summary judgment to Gemmy, holding that it did not infringe Winfield's copyright. The court held that Gemmy did not have access to Winfield's witch design; that, even if it did have access, Gemmy's three-dimensional crashing witch was not substantially similar to Winfield's two-dimensional witch design; and that even if Winfield had copyright protection in a three-dimensional depiction of its witch design, Gemmy's crashing witch was not substantially similar. The district court therefore granted Gemmy a declaratory judgment of non-infringement. Because the court found no substantial similarity between Gemmy's crashing witch and Winfield's witch, the court dismissed Gemmy's infringement counterclaim as moot, since it was premised on a finding of substantial similarity on Winfield's infringement claim.

On appeal, Winfield argues that Gemmy did in fact have access to Winfield's design and photographs of Winfield's assembled witch, primarily through catalogues mass mailed by Winfield. In addition, Winfield argues that the district court erred in refusing to accord copyright protection to the three-dimensional display of its witch. Winfield also argues that the district court erred by

3

according no originality to–and thus finding no protectible elements in–Winfield's witch. Finally, Winfield argues that the district court erred by basing its finding of no substantial similarity on the fact that Gemmy's crashing witch was made of materials different from those making up Winfield's witch. Gemmy cross appeals, arguing that the district court should have excluded Winfield's catalogues from evidence because Winfield did not properly disclose them in response to Gemmy's discovery requests. Winfield appeals the district court's grant of attorney fees to Gemmy under 17 U.S.C. § 505, arguing that even if the district court was correct in dismissing it, Winfield's infringement claim was not frivolous. Finally, Gemmy requests, in two last-minute motions submitted to this court, that we supplement the record with certain evidence, and strike certain other evidence from the record, before deciding this case.

**ANALYSIS**

## I. Standard of Review and Applicable Legal Standard For Copyright Infringement

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Granting summary judgment in copyright infringement cases, "particularly in favor of a defendant, is a practice to be used sparingly, but a court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity." *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) (internal quotations omitted).

To succeed in a copyright infringement action, a plaintiff must establish that it owned the copyrighted creation and that defendant copied it. *Id.* In this case, Winfield's ownership of the

4

copyright on its witch design is not disputed; thus, whether Gemmy copied Winfield's witch is the only copyright issue in the case. In cases where there is no direct evidence of copying, a plaintiff may establish an inference of copying by showing 1) defendant's access to the allegedly infringed work and 2) a substantial similarity between the two works at issue. *Id.* at 853-54. The district court held that Winfield failed to establish either of these elements.

## II.      The Extent Of Winfield's Copyright Protection

In order to determine whether Winfield's copyright was infringed, we must decide, as a threshold matter, the extent of Winfield's copyright protection in its witch. The district court held that Winfield's copyright protection extended only to its witch design, not to the figure crafted from that design. Nonetheless, Winfield's copyright registration included not only its design, but a photograph of a witch assembled according to that design. In addition, Winfield's registration indicates the "nature of authorship" as, *inter alia*, photographs. Therefore, Winfield clearly sought copyright protection not only in its witch design, but in the three-dimensional witch constructed according to the instructions in that design.

In limiting protection to the design, the district court cited several cases involving clothing, in which courts refused to accord copyright protection to the actual articles of clothing, despite recognizing protection for the clothing designs. Not only were these all district court opinions from other circuits, they were all cases in which the court's decision rested upon, to great extent, a specific problem: namely, that giving copyright protection to clothing, which has a utilitarian function, would allow for the protection of patent-like features without having to fulfill the rigorous standards for obtaining a design patent. *See Jack Adelman, Inc. v. Sonners & Gordon, Inc.*, 112 F.Supp. 187, 188-89 (S.D.N.Y. 1934); *Beaudin v. Ben and Jerry's Homemade, Inc.*, 896 F.Supp.

5

356, 358 (D. Vt. 1995); *Russell v. Trimfit, Inc.*, 428 F.Supp. 91, 93-95 (E.D. Pa. 1977). The decorative witches at issue in the instant case, however, are purely aesthetic, and thus have no patent-like features to argue against copyright protection.

*Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274 (6th Cir. 1998), a design architecture case that Gemmy cites on appeal, is similarly inapposite. *Nino Homes* involved an alleged infringer's using plaintiff's copyrighted architectural plans to construct homes similar to those constructed according to plaintiff's plans. The *Nino Homes* court ruled that "one may construct a house which is identical to a house depicted in copyrighted architectural plans, but one may not directly copy those plans and then use the infringing copy to construct the house." *Id.* at 280. Gemmy points to *Nino Homes* for the proposition that while it is forbidden from copying Winfield's design, Gemmy is free to copy the object constructed from that design. But as with the clothing cases, the outcome of *Nino Homes* was dependent upon the peculiar nature of houses as "useful" objects: i.e., utilitarian or functional creations whose protection sounds more appropriately in patent than in copyright. Throughout its analysis, the *Nino Homes* court explicitly and repeatedly acknowledged this problem of merging copyright into patent. *See id.* at 278-80. Furthermore, *Nino Homes*, like the clothing cases, relied upon *Baker v. Selden*, 101 U.S. 99 (1879), for the principle that copyright protection is not to be extended from patterns/drawings to the objects they describe. But *Baker* dealt with a book that described useful forms and modes of accounting: i.e., functional features more appropriate for patent protection than copyright. Even the *Baker* Court included the following caveat in its opinion:

> Of course, these observations are not intended to apply to ornamental designs, or pictorial illustrations addressed to the taste. Of these it may be said, that their form is their essence, and their object, the production of pleasure in their contemplation.

6

> This is their final end. They are as much the product of genius and the result of composition, as are the lines of the poet or the historian's period.

*Id.* at 103-04.

In the case before us, Winfield's witch is, in *Baker*'s terms, a purely "ornamental design." It is art, plain and simple; like a painting or a sculpture, its only function lies in being pleasing to the eye. Therefore, the reasoning behind the clothing and architecture cases clearly does not apply. The parties do not direct us to any cases where patterns or drawings instruct the creation of purely ornamental objects. We think, however, that the most useful paradigm is the case law affording copyright protection for two-dimensional drawings/cartoons to three-dimensional depictions that are substantially similar. *See King Features Syndicate v. Fleischer*, 299 F. 533 (2d Cir. 1924) (finding copying in defendant's creating three-dimensional "Sparky" figure based on copyrighted two-dimensional cartoon); *Geisel v. Poynter Prods. Inc.*, 295 F.Supp. 331 (S.D.N.Y. 1968) (according copyright protection to three-dimensional Dr. Seuss dolls based upon two-dimensional cartoon); *Fleischer Studios, Inc. v. Freundlich*, 5 F.Supp. 808 (S.D.N.Y. 1934) (according copyright protection to three-dimensional Betty Boop doll based upon two-dimensional cartoon).

In the Sparky toy horse case, the Second Circuit said the following:

> We do not think it avoids the infringement of the copyright to take the substance or idea, and produce it through a different medium, and picturing in shape and details in sufficient imitation to make it a true copy of the character thought of by the appellant's employee. Doing this is omitting the work of the artisan, but appropriating the genius of the artist.

*King Features*, 299 F. at 535. Similarly, in the Betty Boop case, the court noted the very distinctive features of the cartoon girl and then said that defendants:

> did not make an exact copy of the embodiment of the plaintiffs' character as depicted by Fleischer, but what they did make gives precisely the same impression because there is really no essential difference between the plaintiffs' drawing and the

defendants' doll except that the hair is somewhat differently arranged . . . The defendants' doll, therefore, comes within the definition of a copy which is laid down in [the Sparky toy horse case].

*Fleischer Studios*, 5 F.Supp. at 809.

Under the reasoning presented in this line of cases, Winfield's witch copyright–consisting of detailed patterns and photos of an assembled product–should encompass three-dimensional copyright protection. Otherwise, although there is no allegation that Gemmy did so in this case, a Winfield competitor could simply follow Winfield's instructions to the letter and create the exact artistic product that Winfield developed through its own ingenuity, and then the competitor could sell that three-dimensional replica as its own. Or a competitor could reach the same result by closely studying the photographs in Winfield's catalogues and using them to reverse-engineer a Winfield witch. In either case, to categorically refuse to extend copyright protection to a three-dimensional manifestation of Winfield's witch is to allow a competitor theoretically to steal Winfield's precise expression of its creative vision, thus chilling the very creative expression that copyright law is meant to foster.[2]

## III.    Access

Having decided that Winfield's copyright protection extends to the actual witch decoration

---

[2]Winfield argues at times that its three-dimensional assembled witch is a derivative work, which Winfield has the exclusive right to create. *See* 17 U.S.C. § 106(2). This argument is meritless for several reasons. First, it conflicts with Winfield's better argument that its copyrighted design and photographs accord protection to three-dimensional copies (i.e., not derivative works). Second, Winfield's three-dimensional witch is almost certainly not a derivative work; it involved not a scintilla of independent creativity, but merely employing physical labor to carry out the design instructions. *See Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 909-10 (2d Cir. 1980) (noting that "to support a copyright the original aspects of a derivative work must be more than trivial," and that although reproducing pre-existing works in a different medium involves some degree of manufacturing skill, that does not constitute originality for copyright purposes). And finally, even if Winfield's witch were a valid derivative work spawned from its copyrighted design, Winfield would be precluded from suing to claim its infringement, since it has not registered its three-dimensional witch as a derivative work. *See Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 632 (6th Cir. 2001) (holding that "before an infringement suit can be sustained based on the derivative work, that derivative work must be registered").

8

crafted from its design, we must apply the test for copyright infringement. The first question is whether Gemmy had access to Winfield's witch in order to copy it. *See Kohus*, 328 F.3d at 853-54. "The access element of a copyright infringement claim is usually the less problematic." *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004). Access requires the defendant's seeing or having a reasonable opportunity to see plaintiff's work and thus having the opportunity to copy it. *See id.* We have cited with approval the notion that evidence that a third party with whom both plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by the defendant. *See id.*

The district court found that, although Winfield "explains how [Gemmy] had a reasonable opportunity to view figures crafted from [Winfield's] design, [Winfield] neglects to establish how [Gemmy] had a reasonable opportunity to view the design itself," and thus the court held that Winfield failed to satisfy the access element. Because Winfield's copyright protection extends to the actual witch decoration crafted from its design and photographs thereof, however, the district court's finding that Gemmy failed the access prong solely because it lacked access to Winfield's design was erroneous. The district court found that Gemmy had access to photographs of Winfield's assembled witch, on the basis of Winfield's unrefuted affidavits swearing that photographs of its witch appeared in millions of catalogues distributed throughout the country. This was all that was necessary for Gemmy to have had the requisite access to make copying possible.

**IV. Substantial Similarity**

Once a plaintiff has established access, it must show substantial similarity between the two works at issue. *See Kohus*, 328 F.3d at 853-54. The district court found no substantial similarity between Winfield's witch and Gemmy's crashing witch for two basic reasons. First, the court held

9

that Winfield maintained copyright protection only in its two-dimensional witch design, and thus that Gemmy's three-dimensional crashing witch could not possibly be substantially similar. Alternatively, the district court held that a witch constructed from Winfield's design was still not substantially similar to a Gemmy crashing witch. While we do not agree that Winfield's copyright protection was limited to its design, we do agree with the district court's bottom-line conclusion that Gemmy's crashing witch is not substantially similar to a witch crafted from Winfield's design.

This circuit adopted a two-step approach for substantial similarity in *Kohus*, 328 F.3d 848. The first step is to "filter out the unoriginal, unprotectible elements–elements that were not independently created by the inventor, and that possess no minimal degree of creativity." *Id.* at 855. A helpful tool in performing this analysis is Judge Learned Hand's famous abstractions test:

> Upon any work, and especially upon a play, a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. The last may perhaps be no more than the most general statement of what the play is about, and at times might consist only of its title; but there is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his "ideas," to which, apart from their expression, his property is never extended.

*Id.* (quoting *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930)). This test does not lay out a concrete dividing line, but is a helpful methodological tool that can be used to identify a spectrum of options. *Id.*

In performing the filtering process, the basic guidepost to keep in mind is that copyright only protects an author's original expression; thus, courts must exclude as unprotectible any elements of the work that are not original. The originality requirement does not mean that an element must be novel or unique, only that it was independently created by the author. *See id.* at 853. In addition, courts must be careful to make the ever-difficult distinction between an author's ideas and his

expression of those ideas. *See id.* at 855 ("It is axiomatic . . . that mere abstract ideas are not protectible, but the expression of an idea is.") (citing *Mazer v. Stein*, 347 U.S. 201, 217 (1954)). More specifically, if there is essentially only one way to express an idea, then that idea and its expression are inseparable, and thus under the merger doctrine such expression is not protected. In addition, courts must filter out scenes a faire, which are those elements that follow naturally from the work's theme, rather than from the author's creativity. *Id.* at 856. Finally, if a work is to some degree functional, a court must filter out any elements dictated by efficiency. *Id.*

Once the unprotectible elements have been filtered out, the second step is to determine whether the allegedly infringing work is substantially similar to the protectible elements of the original. *Id.* This analysis requires that the trier of fact determine substantial similarity from the perspective of the work's target audience. *Id.* at 857. Normally, a copyright work's target audience is the lay public, or the ordinary reasonable person, *id.*, and in the case before us both parties agree on this as the intended audience. Therefore, expert testimony should not be required for this portion of the analysis. *See id.*

The district court performed an originality analysis for Winfield's three-dimensional witch–even though it did not deem it protected by Winfield's design copyright–in which the court found that Winfield's witch contained no original elements of expression. Winfield correctly argues that the district court erred in performing this originality analysis.

The district court properly noted that in determining originality, it must filter out ideas, expression that is inseparable from the idea expressed (merger doctrine), elements common to the topic being depicted (scenes a faire), and anything functional. It was thus correct in noting that elements such as a flowing cape, curled boots, black clothing, and a broom are scenes a faire for a

11

witch, or at least so abstract as to constitute unprotectible ideas rather than particularized expression. Nonetheless, to the extent that the district court implies that just because these generalized elements are unprotectible, Gemmy could have produced an exact replica of Winfield's witch–or even an exact replica of that witch's hair, broom, cape, or clothing–it is incorrect.

*Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133 (2d Cir. 2004), a case cited by Winfield, is instructive. *Mattel* rejected the notion that vague doll features such as widely spaced eyes, upturned noses, and bow lips could never merit protection, stating that "[t]he proposition that standard or common features are not protected is inconsistent with copyright law." *Id.* at 135. The *Mattel* court also said the following:

> There are innumerable ways of making upturned noses, bow lips, and widely spaced eyes. Even if the record had shown that many dolls possess upturned noses, bow lips, and wide-spaced eyes, it would not follow that each such doll–assuming it was independently created and not copied from others–would not enjoy protection from copying.

*Id.* But then the *Mattel* court said something that is not so favorable to Winfield:

> Mattel's copyright in a doll visage with an upturned nose, bow lips, and widely spaced eyes will not prevent a competitor from making dolls with upturned noses, bow lips, and widely spaced eyes, even if the competitor has taken the idea from Mattel's example, so long as the competitor has not copied Mattel's particularized expression. An upturned nose, bow lips, and wide eyes are the "idea" of a certain type of doll face. That idea belongs not to Mattel but to the public domain.

*Id.* at 136. In other words, there has to be particularized similarity in the works' features for copyright infringement, but just because that similarity might be encompassed within a more general idea unworthy of copyright protection does not mean that the more particularized similarity cannot constitute infringement.

The district court in the case at bar made a mistake similar to that made by the district court in *Mattel*. The court reasoned that because elements such as flowing capes and black clothing are

12

scenes a faire and/or abstract ideas with regard to witches, Winfield's witch's cape and clothing (for example) lack originality and are thus entirely unworthy of protection. This broad proclamation is incorrect, for at some point Gemmy could make a flowing cape or black clothing that is so similar to Winfield's cape and clothing as to constitute copying.

But the *Mattel* analysis ultimately dooms Winfield's case. To make its witch seem similar to Gemmy's requires Winfield to describe the elements of its witch at a level of generality that is so abstract as to constitute scenes a faire for witches, or at least ideas rather than expression. Winfield's flowing cape, black clothing, bent hat, and perpendicular broom are like the upturned noses, wide eyes, and bow lips in *Mattel*. These characteristics are too generalized by themselves to warrant protection, although the particular capes, clothing, hats, or brooms could theoretically be similar enough to constitute infringement. Winfield loses because, viewing its witch side-by-side with Gemmy's crashing witch, the two are not even close to looking the same, apart from the generalized idea that they are both witches crashing into trees. Their hats, brooms, capes, hair, shoes, and colors are all significantly different. To the extent Gemmy has copied anything, it has copied Winfield's idea of a crashing witch, not its particularized expression of that witch. *See, e.g., Beaudin*, 896 F.Supp. 356 (finding no substantial similarity between two hats covered in Holstein cow patterns, where even though defendant admitted it took the idea from plaintiff's hats, defendant had not actually copied the exact same pattern onto any of its hats).

Winfield also argues that the district court erred by basing its finding of no substantial similarity on the stark differences in materials making up Winfield's and Gemmy's witches. The district court noted the following:

> [F]igures from [Winfield's] design have a mop for the hair and a black plastic trash
> bag for the cape. In sharp contrast, [Gemmy's] crashing-witch figure is not made

13

from plywood and household materials such as mops and plastic bags; rather, the figure is made from refined materials and have [sic] detailed features: molded-plastic hands, socks, and boots; silk-like hair; foam for the arms, legs, and body; and fabric for the hat, clothing, and cape. These stark differences preclude a finding that [Gemmy's] crashing-witch figure is substantially similar to a figure crafted from [Winfield's] crashing-witch design.

We read this passage as merely stating an additional reason for not finding substantial similarity between Winfield's and Gemmy's witches. Not only do the witches look different, but they are made from very different materials that contribute to their different appearances. It is certainly not error to point out the different constituent materials in the context of determining that two works do not look the same. No matter what the focus, however, the important point is that Winfield's and Gemmy's witches are not substantially similar in appearance, which means that Winfield's copyright infringement claim was properly rejected by the district court.

## V.      Gemmy's Cross Appeal On Discovery Issues

Gemmy moved for the district court to strike several of Winfield's exhibits attached to its summary judgment opposition brief, because Winfield allegedly failed to properly produce them in response to valid discovery requests. This handful of exhibits included examples of Winfield's catalogues containing pictures of its assembled witch as an advertisement for selling the design, a chart compiled by Winfield describing the circulation of its various catalogues, and a district court opinion in a related case involving Winfield's witch and a different defendant. The district court refused Gemmy's motion, adopting as its reasoning a portion of Winfield's brief in opposition, and Gemmy appeals this ruling.

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Brown*, 367 F.3d 549, 554 (6th Cir. 2004). Regardless of the propriety of the district court's refusal to strike the evidence, we fail to see any harm to Gemmy resulting from this decision. Even if the

14

district court were to have ignored the catalogues, Winfield would still have put forth sufficient proof of access, as Gemmy never disputed that millions of catalogues had been in circulation with pictures of Winfield's witch. And as to the other district court opinion, if it is "evidence" at all, there is no indication that the district court in this case relied on it. We find no abuse of discretion here. *See* Fed. R. Civ. P. 37(c)(1) (allowing the district court to refuse to exclude evidence if lack of prior disclosure was harmless).

## VI.    Attorney Fees

Winfield also appeals the district court's decision to award attorney fees to Gemmy pursuant to 17 U.S.C. § 505. We review a district court's decision to grant or deny fees for abuse of discretion. *Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 639 (6th Cir. 2001); *see* 17 U.S.C. § 505 (providing that "the court in its discretion may allow the recovery of full costs . . . [including] a reasonable attorney's fee to the prevailing party as part of the costs"). The Supreme Court has approved of several factors in determining when to award attorney fees to a prevailing party in a copyright case, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (internal quotation omitted). In its opinion regarding the attorney-fees issue, the district court awarded Gemmy $50,376.17 in fees, stating that the court's opinion regarding the substantive copyright issues made it clear that Winfield's complaint was "frivolous and objectively unreasonable, and, further, it is important to deter [Winfield] from bring [sic] such claims in the future."

15

We are convinced that Winfield's infringement claim was not frivolous or objectively unreasonable. The district court based its decision primarily on the premise that Winfield's copyright protection was limited to its design, and that Winfield could not reasonably claim that its two-dimensional design could be substantially similar to Gemmy's three-dimensional witch. For reasons set out above, this premise was erroneous; Winfield's copyright protection extended to its constructed witch and photographs of that witch. In addition to this fundamental mistake, the district court also erred in its analyses of access and originality. In light of these errors, which made the case look more lopsided than it was, and given the inherently subjective nature of the abstractions test, we hold that the district court abused its discretion in finding Winfield's complaint frivolous and objectively unreasonable, and we therefore reverse the court's award of attorney fees to Gemmy.

## VII. Last-Minute Motions

In the final days before oral argument was heard in this appeal, Gemmy submitted two motions to this court: a Motion to Supplement the Record with evidence that Winfield was aware of Gemmy's earlier hanging witch when Winfield filed its infringement complaint, and a Motion to Strike certain evidence relating to a similar litigation between Winfield and Sun Hill Industries, Inc. These motions were filed only sixteen days prior to oral argument, in response to filings made by Winfield more than four months prior. Because Gemmy offers no compelling reason for our considering evidence not before the district court; because the disputed evidence in the two motions is of little or no relevance to our substantive decisions in this case; and because of the inexplicable lateness of these submissions, both motions are denied.

## CONCLUSION

16

Accordingly, we **AFFIRM** the district court's judgments dismissing Winfield's copyright claim and denying Gemmy's Motion to Strike certain of Winfield's summary judgment exhibits; we **REVERSE** the district court's award of attorney fees to Gemmy; and we **DENY** Gemmy's last-minute Motion to Supplement the Record and Motion to Strike submitted to this court on appeal.